641 A.2d 1193

SOCIEDAD COMERCIALIZADORA y DE SERVICIOS UNI-FRUTTI TRADERS LIMITADA, a/k/a Unifrutti Traders Limitada; Dovex Corporation, Dovex Fruit Company and Unifrutti of America, Inc., Appellees,

v.

Waldo Francisco Tornel QUIZADA, Valeria Pascual Tornel, Marisol Tornel Pascual, Valeria Tornel Pascual, David Tornel Pasqual, Renta Fruit N.A., Inc. and Importadora y Esportadora Renta–Frut Limitada, Appellants.

Superior Court of Pennsylvania.

Argued June 10, 1993.

Filed Sept. 24, 1993.

Reargument Granted Dec. 7, 1993.

Order Granting Application to
Discontinue Reargument
April 7, 1994.

Opinion Reinstated April 7, 1994.

Gerald C. Grimaud, Tunkhannock, for appellants.

Thomas B. Rutter, Philadelphia, for appellees.

Before OLSZEWSKI, POPOVICH and CERCONE, JJ.

POPOVICH, Judge.

This case concerns the appeal of the September 4, 1992, order [1] of the Court of Common Pleas of Philadelphia County denying the dissolution of an injunction by the Defendants/Appellants.[2] We reverse.

From the record *certified* to this Court, we glean the following pertinent facts: On December 19, 1991, the Plaintiffs [3] filed a complaint in equity seeking the enforcement of an oral agreement to settle a dispute over the price paid by the Plaintiffs for the Defendants' produce. Specifically, one of the Plaintiffs, Unifrutti of America, Inc. (U.A.), contracted with the Defendants to buy their fruit. The price to be paid was predicated upon what the product was sold for in the United States by U.A. With nonpayment, the Defendants instituted proceedings in Chile (arbitration to recoup monies due) and in the United States (suit to obtain information to be utilized against U.A. in Chile). Common Pleas Court found U.A. in contempt for failing to provide the documents sought by the

1. Since the September 4th *order* deals with a refusal to dissolve a confidentiality injunction, albeit interlocutory, it is appealable as of right. *See* Pa.R.App.P. 311(a)(4).

  We would note, however, because the relief sought by the Plaintiffs was equitable in nature, it would have been the better practice for the Chancellor to have denominated its order as a "Decree", and if there had been an opinion submitted it would have been proper to label it an "Adjudication". *See* Pa.R.Civ.P. 1517; *see also* note 9, infra.

  Despite the lack of conformity with our Rules of Civil Procedure, we find that, in substance, all necessary elements are present for us to assess the Defendants' claim. *Cf. Kazanjian v. New England Petroleum Corp.*, 332 Pa.Super. 1, 480 A.2d 1153, 1154 n. 1 (1984).

2. The Defendants consist of Waldo Francisco Tornel Quizada, his wife (Valerie Pascual Tornel), his three children (Marisol Tornel Pascual, Valeria Tornel Pascual and David Tornel Pasqual), and two entities (Renta Fruit N.A., Inc. and Importadora y Exportadora Renta–Fruit Limitado), the former is registered to do business in Philadelphia and has Marisol Tornel Pascual as its sole director and officer, while the latter has its principal place of business in Santiago, Chile.

3. The Plaintiffs consist of the following: Sociedad Comercializadora y De Servicios Unifrutti Traders Limitada, a company doing business in Santiago, Chile; Dovex Corp. and Dovex Fruit Co., both having their principal place of business in the State of Washington; and Unifrutti of America, Inc., which does business in Philadelphia.

Defendants. Following this, the Plaintiffs contacted the Defendants to discuss settlement.

Beginning on October 29, 1991, and continuing for 3 days, the Plaintiffs and Defendants where unsuccessful in negotiating a resolution of the dispute. Discussions were reinstated on November 5, 1991, and culminated in a supposedly "firm, final and binding oral settlement agreement" on November 6, 1991. *See* Plaintiffs' Complaint, Paragraph 42. Confirmation of the oral agreement reportedly was reduced to letter form by both sides, each acknowledging that settlement had been achieved. *Id.* at 43 & 44. The agreement was to consist of a fixed dollar amount, a return of Plaintiffs' documents, the cessation of all litigation, the sealing of all records and the divulging of no information by the Defendants. *Id.* at 45.

In compliance with the parties' understanding of the finalized agreement, the court directed that, *inter alia*, all documents be sealed and impounded. Then the Plaintiffs asserted that the Defendants "failed and refused, without just or valid reason, to execute the necessary documents in order to consummate and effectuate the oral agreement...." *Id.* at 54. To rectify the situation, the Plaintiffs sought an injunction to foreclose the Defendants from disclosing information (e.g., trade secrets) obtained from U.A.

With the approval of the court and their clients, counsel entered into a "Statement of Agreement" whereby no lawsuit would be instituted in advance of the parties appearing in Common Pleas Court, no confidential information in the Defendants' possession would be disclosed and the proceedings in Chile would be suspended.[4] N.T. 12/19/91 at 3–7.

4. It would seem that counsel appeared in Common Pleas Court *to begin* negotiations in an effort to settle matters. The jury room was offered by the court to reach an amicable solution. N.T. 2/3/92 at 10.

However, there was some question as to the authority of the three Defendants (Waldo, Valerie and Marisol) to act on behalf of the missing Defendants. *See* note 2, supra. Nonetheless, those present agreed discussions could commence and, if a proposed resolution was attained, what had been consented to would be communicated to the absentee-Defendants. There is no indication of record as to when or how this discussion ended.

On the same day the "Statement of Agreement" had been acknowledged in open court, the Plaintiffs filed a complaint in equity to enjoin the Defendants from repudiating the alleged oral settlement agreement. What followed was a response by the Plaintiffs to the Defendants answer and new matter,[5] in which it was averred that a settlement agreement had been reached. *See* Plaintiffs' Reply, Paragraphs 66, 73 & 74.

By order dated April 2, 1992, the statute of limitations was tolled pending a final decision by the court in regard to the Plaintiffs' suit to enforce the settlement agreement, information and/or documents relevant to the case were to be kept confidential absent a lawful subpoena or court order, all proceedings were to be stayed and neither party could commence any action against the other without leave of court.

The Plaintiffs, in answer to the Defendants' request to dismiss the complaint as violative of public policy, reiterated its earlier assertion that "the parties . . . [had] reached a valid and enforceable oral settlement agreement . . . which . . . Plaintiffs . . . sought [to] enforce[ ] by . . . Complaint." Also, the Plaintiffs mentioned that "the core element of the settlement agreement [wa]s a confidentiality requirement which s[ought] to cause Defendants to remain silent. . . ."

In an effort to resolve the existence/enforceability of the oral settlement agreement, the parties met in court on April 13th, 14th and 20th of 1992. At the April 13th proceeding the court heard argument and the Plaintiffs recounted how the Defendants' "unwillingness" to execute an agreement rendered the preceding negotiations nugatory. N.T. 4/13/92 at 8. Defendants refuted any such agreement. *Id.* at 15 & 22. Additionally, the Plaintiffs' counsel stated:

The [Defendants], according to all the evidence, which we all know about, made a settlement of the underlying case through attorneys who were duly authorized to do so, attorneys who suggested the confidentiality aspect of the

5. This pleading appears nowhere in the official record forwarded to this Court. *See* Pa.R.App.P. 1921.

case, which we have adopted and accepted as our own. After they make the settlement, they want to renege on it.

Then what happens? We have a lawsuit involving the settlement, which is in front of a couple of judges until it gets to [the present (third) judge].

*Id.* at 17.

On the second day of discussions (April 14th), the Defendants requested a Pa.R.Civ.P. 1531(f) final hearing since they believed the court's April 2nd order was an injunction involving freedom of speech. The Plaintiffs disputed the applicability of Rule 1531(f), and all consented to start trial the following Monday to resolve the contract question. N.T. 4/14/92 at 6. Nevertheless, the next time the parties were in court (i.e., April 20th), no testimony was proffered. Rather, the only reference to the existence of an agreement came via oral argument by counsel.

The court conceded that the issue to be addressed was whether the parties "consummated" an agreement. N.T. 4/20/92 at 58. To dispose of this controversy, the court thought it wise to "hear" the case to appreciate "the full impact of all the evidence." *Id.* at 65. Stated otherwise, the court "prefer[red] to hear the full record as to whether ... the lawyers representing Mr. Tornel did ... have authority ... rather than attempt to address it in the context of [a] speaking motion." *Id.* at 66. Plaintiffs' counsel concurred with the court that it should "hear the evidence". Id. at 78.

On the other hand, the Defendants wanted to pursue the question of alleged criminal conduct by the Plaintiffs with the United States Attorney's Office and, if not satisfied, the Pennsylvania Attorney General's Office regarding the sale of produce. To accommodate the Defendants, the court proposed that the proceedings be continued pending the Defendants' excursion to the other judicial offices.

Yet, the course to take was still not resolved with the Defendants' desire to pursue both avenues of recourse: court hearing and the presentment of alleged criminal activity by the Plaintiffs to the United States Attorney's Office and/or the

Pennsylvania Attorney General's Office. As a result, the court decided to hold the hearing in abeyance and "let the [April 2, 1992,] order stand as is" while the Defendants spoke to the federal and state officials.

The next item appearing in the record is a court order reading:

AND NOW, this 4th day of September, 1992, upon consideration of Defendants' Motion to Dissolve a Confidentiality Injunctive Order of April 2, 1992 by this Court, Plaintiffs' response thereto as well as other memoranda and oral argument thereon, it appearing that:

1. The provisions of Pennsylvania Rule of Civil Procedure 1531(f) are inapplicable and, therefore, unenforceable in contractual confidentiality *agreements which have been* negotiated, *accepted and entered into by the parties for the purpose of attempting to reach a claim;* and

2. The language of the Order in question was specifically agreed to by Defendants' counsel in his letter of March 31, 1992 to this Court; it is hereby ORDERED that said Motion is DENIED.

Thereafter, an appeal was perfected and questions, first, whether the April and September 1992 Decrees were restraints upon freedom of expression entitling the Defendants to the remedial benefits of Rule 1531(f), i.e., an expedited hearing within three (3) days of issuance of the injunction or the automatic dissolutionment of the restraining order.

Preceding our inquiry on the applicability of Rule 1531(f) to the case instantly, we deem it prudent to decide whether the parties bound themselves contractually to an oral settlement agreement.[6] The essential elements of the alleged oral settlement agreement appear in the Plaintiffs' Complaint at Paragraph 45(1)–(8); namely:

(1) Plaintiffs would pay to Defendants an agreed-upon sum of money.

---

6. If the parties failed to enter into an agreement, it being the underpinning for the issuance of the injunctive order, no justification would exist to continue the enjoinder.

(2) All documents relating to Plaintiffs including, without limitation, the documents unlawfully obtained by Marisol Tornel, all documents related to Plaintiffs in the possession or control of Defendants, the files and notes of Defendants' attorneys, or any third party—*i.e.*, all written information— would be retrieved by Defendants and returned to Plaintiffs or destroyed.

(3) No written information, or any of the contents thereof, would be used or divulged by Defendants to anyone but, instead, all information Defendants had regarding Plaintiffs, both written and oral, would be held in strictest confidence as would the Oral Agreement and the written agreements contemplated thereby.

(4) Mutual general cross releases and covenants not to sue would be exchanged between all Plaintiffs and all Defendants, and Defendants would not counsel or assist any other person, either directly or indirectly, to commence any suit or other proceeding against any Plaintiff.

(5) The Chilean Proceedings would be terminated and the parties would jointly request the arbitrator to hold all arbitration documents as confidential.

(6) The U.S. Proceeding would be terminated, the record thereof sealed, and the contempt citation entered against U.A. and "Dovex" set aside by mutual consent.

(7) Injunctive relief and compensatory, consequential, incidental and punitive damages would be awarded for any breach of the Oral Agreement.

(8) Defendants' counsel, because of their exposure to the confidential documents, would not be counsel for, or assist in the prosecution of, a claim by any other person against Plaintiffs, and such counsel would be bound by the same confidentiality provisions as would the Defendants.

To resolve the matter at hand, we begin with the observation that there is a strong judicial policy in favor of voluntarily settling lawsuits. *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543, 546 (1983) (Citations omitted); *In re Trust of Mintz*, 444 Pa. 189, 282 A.2d 295, 299 (1971). The primary

reason is that settlement expedites transference of money into the hands of a complainant. A secondary reason is that settlement reduces the burden on and expense of maintaining the courts. *Rothman,* supra.

> Voluntary settlement of civil controversies is in high judicial favor. Judges and lawyers alike strive assiduously to promote amicable adjustments of matters in dispute, as for the most wholesome of reasons they certainly should. When the effort is successful, the parties avoid the expense and delay incidental to litigation of the issues; the court is spared the burdens of a trial and the preparation and proceedings that must forerun it.

*Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197, 1199 (1969).

█ Compromises may take the form of written agreements or oral settlements, both of which are recognized as valid and enforceable. 1 P.L.E. Accords and Compromise § 3 (1986).

> Of course, preliminary negotiations do not constitute a contract. "However, if the parties orally agree to all of the terms of a contract between them and mutually expect the imminent drafting of a written contract reflecting their previous understanding, the oral contract may be enforceable."

> An oral settlement agreement may be enforceable and legally binding without a writing. "Where parties have reached an oral agreement, the fact that they intend to reduce the agreement to writing does not prevent enforcement of the oral agreement."

*Kazanjian v. New England Petroleum Corp.,* 332 Pa.Super. 1, 480 A.2d 1153, 1157 (1984) (Citations omitted). As a corollary to the aforesaid:

> If the parties agree upon essential terms and intend them to be binding, "a contract is formed even though they intend to adopt a formal document with additional terms at a later date." *The intent of the parties is a question of fact which must be determined by the factfinder. A reviewing court*

*must defer to the findings of the trier of the facts if they are supported by the evidence.*

*Johnston v. Johnston,* 346 Pa.Super. 427, 499 A.2d 1074, 1076–77 (1985) (Citations omitted; emphasis added). Accord *Woodbridge v. Hall,* 366 Pa. 46, 76 A.2d 205, 206 (1950) (Equity court had jurisdiction to enforce oral settlement agreement entered into by the parties; the findings of the chancellor were not disturbed on appeal because there was substantial evidence to support it).

■ At bar, the record is not supportive of the Chancellor's legal conclusion that Rule 1531(f) is "inapplicable and ... unenforceable in contractual confidentiality *agreements which have been* negotiated, *accepted and entered into by the parties for the purpose of attempting to reach a settlement in the underlying claim; and ... [t]he language of the [April 2, 1992,] Order ... was specifically agreed to by Defendants' counsel in his letter of March 31, 1992 to this Court* [.]" *See* September 4, 1992, Decree (Emphasis added).

As to the first portion of the Chancellor's Decree, the record is unclear as to whether the parties (although having "entered into negotiations") "accepted" an agreement binding themselves to "confidentiality". In fact, the Defendants' counsel took no action because of the enjoining affect of the Chancellor's April 2nd Decree requiring the Defendants to "keep strictly confidential ... each and every fact, document or writing relevant to, or implicated in, this proceeding...." *See also* N.T. 4/20/92 at 68–73, 81.

Furthermore, the attorneys argued vigorously and extensively before the Chancellor as to their respective positions regarding the presence or absence of a binding contract. Nevertheless, *no testimony was received by the Chancellor to resolve the dispute over mutual assent to the alleged oral settlement agreement.*[7] This was so despite the fact that the

---

7. The Defendants did not waive this contention inasmuch as counsel requested the Chancellor to proceed to conduct a hearing on the existence of and authorization for the purported oral settlement agreement. N.T. 4/20/93 at 106–08. No such hearing ever took place; the case was continued.

Chancellor had indicated that it would be advisable to "hear" the case to appreciate "the full impact of all the evidence." N.T. 4/20/92 at 65. Instead, the case was continued.

From our review of the facts, the record is devoid of support for the Chancellor's legal conclusion that "acceptance" had been established with respect to the "contractual confidentiality agreement" so as to bind the Defendants to comply with the September 4th Decree. *See Kazanjian,* supra.

Likewise, we have scoured the official record and have been unable to locate the referenced March 31, 1992, letter in the Chancellor's September 4th Decree.[8] As such, we may not affirm a legal conclusion which draws its essence from facts which are not of record.

The appellate courts of Pennsylvania have consistently held that the scope of review of equity matters is limited and the chancellor's findings of fact will not be disturbed unless they are unsupported by adequate evidence.[9] The chancellor's conclusion, being his reasoning from the facts, is reviewable, but only to determine whether or not the

8. An examination of the reproduced record does not fill this void, save for a notation under "Relevant Docket Entries" at "B" which reads: "March 31, 1992—[Attorney for the Defendants'] letter to Judge...."

Even if, *arguendo,* the letter existed, the crux of the dispute centers upon the *Defendants'* denial of entering into an agreement or authorizing anyone on their behalf to consummate the agreement under assault here. Thus, the presence of the March 31st letter would not rebut the Defendants' assertion of non-entry or not authorizing another as to the alleged agreement. A hearing, at which testimony could have been produced, would have been the preferred route to take to resolve the evidentiary ("credibility") issue as to the agreement in dispute. This did not occur. Therefore, the matter is not resolvable on appeal with the record before us now.

9. Instantly, we would note that the Chancellor prepared no adjudication as to his findings of fact and conclusions of law. See Pa.R.Civ.P. 1517. He merely relied on the substance of his September 4th Decree to give us insight as to his justification for the action taken. *See* Memorandum from Chancellor to Prothonotary of Philadelphia County dated October 26, 1992, which reads:

Please be advised that no Opinion will be filed in the above case, as the reasons for the Order of 9-4-92 are contained in the Order itself.

All would have been better served had the Chancellor articulated his factual predicate for his legal conclusions to continue the injunction in effect.

conclusion is reasonable, not contrary to law and not an abuse of discretion.

*Kazanjian,* supra, 332 Pa.Super. at 3, 480 A.2d at 1155 (Citations omitted), and contrast with *Woodbridge,* supra; *Compu Forms Control, Inc. v. Altus Group, Inc.,* 393 Pa.Super. 294, 574 A.2d 618, 622 (1990); *Johnston,* supra.

Because we find the Chancellor's conclusion that the parties had "accepted" the terms of the "contractual confidentiality agreement" to be erroneous and not substantiated by the record, we reverse.[10] *Kazanjian,* supra.

We find additional support for our reversal in the Defendants' Rule 1531(f) argument, i.e., the mandatory requirements of Rule 1531(f) were not adhered to with the Chancellor's failure to conduct a final hearing.

It was not until the second day of negotiations to resolve the dispute (on April 14th) that the Defendants requested a final hearing. There is nothing set forth in Rule 1531(f) or the "Explanatory Comment—1973" thereafter which precluded the Defendants from seeking a final hearing "at any time after a[n] . . . injunction involving freedom of expression [wa]s entered. . . ." *Id.*

The Rule allows for "a final hearing within three (3) days *after demand by the defendant.*" No time period is set for a defendant to make such a "demand". Instantly, the Defen-

---

10. In response to the Dissent's position that a resolution of the Defendants' entitlement to a Rule 1531(f) final hearing is dispositive of the case, we disagree. Even if we were to hold that the Defendants have presented no claim consistent with a "freedom of expression" label, so as to trigger the insulating effect of Rule 1531(f), we are still left with a determination of whether the September 4, 1992, Decree is subject to affirmance under the Defendants' other (second) appellate claim, i.e., does the absence of an oral agreement undermine the validity of an injunction to enforce a non-existent oral contract?

Resolution of such a contention, of necessity, requires that we make inquiry of the underpinnings for the September 4, 1992, Decree. We may not ignore the issue under the guise that the absence of a "freedom of expression" claim forecloses the use of Rule 1531(f)'s expedited hearing procedure. See note 11, infra.

Accordingly, we have addressed the viability and propriety of the September 4th injunction in the initial portion of this opinion from the angle of the factual basis for its issuance.

dants made their "demand" for a final hearing as to the April 2nd injunction on April 14th, which is not at odds with "[t]he basis of the [Rule 1531(f)] procedure ... to give the defendant the *free choice* of a prompt final hearing, *at any time after a preliminary or special injunction involving freedom of expression is entered....*" See "Explanatory Comment—1973" to Rule 1531 (Emphasis added). Therefore, under the language of the Rule, the Defendants acted properly in seeking a final hearing when they did without violating any procedural format. *Id.*

At bar, the Defendants requested a 1531(f) hearing on April 14th, yet, with all parties consenting, the final hearing date was set for April 20th. On that date, no testimony was received even though witnesses were present. Rather, the Chancellor continued the final hearing to allow the Defendants to approach federal and state prosecutors for their assessment of possible (criminal) improprieties attributable to the Plaintiffs concerning the contractual dispute which brought the litigants to court.

*However, the continuance was issued even though the Defendants were desirous of proceeding with the 1531(f) final hearing.* The Chancellor opted to hold the matter in abeyance pending the Defendants' inquiry of federal and state officials.

Rule 1531(f) and the Explanatory Comment thereto would indicate that the Chancellor's failure to conduct a hearing was violative of its *mandatory* requirements; to-wit:

(f)(1) When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and hearing, the court shall hold a final hearing within three (3) days after demand by the defendant. *A final decree shall be filed in the office of the prothonotary within twenty-four (24) hours after the close of the hearing. If the final hearing is not held within the three (3) day period, or if the final decree is not filed within twenty-four*

*(24)* hours after the close of the hearing, the injunction shall be deemed dissolved.

\* \* \* \* \* \*

(3) The trial judge shall file a written memorandum supporting the final decree within five (5) days after it is filed.

\* \* \* \* \* \*

*Explanatory Comment—1973*

\* \* \* \* \* \*

The basis of the procedure is to give the *defendant the free choice of a prompt final hearing, at any time after a preliminary or special injunction involving freedom of expression is entered, simply by filing a demand therefor. Upon the filing of the demand, the final hearing must be held within three days. If it is not held, the preliminary or special injunction shall be deemed dissolved.*

*If the hearing is held, a final decree must be filed within 24 hours after the close of the hearing; if it is not filed, the preliminary or special injunction shall be deemed dissolved.*

*The defendant always has the option to decline this special procedure and to proceed in due course by preliminary objection or by filing an answer or by discovery or by any other procedural techniques available in the ordinary equity action. It is the defendant who may choose whether to suffer under the preliminary or special injunction for an extended period of his own choice, or to use the new guarantees of a prompt and final disposition of the matter.*

\* \* \* \* \* \*

If the defendant demands such a final hearing, then all the equity pleading rules and all the equity rules relating to adjudication, decree *nisi* and exceptions thereto become inapplicable and the case proceeds on the special expedited formula to a final decree.

\* \* \* \* \* \*

In order to assure an appropriate record for an appeal, the rule further makes it the *mandatory duty of the court to*

> *file, within 5 days after the filing of the final decree, a memorandum in support thereof.* [Emphasis added]

Sub judice, both the time-frame within which the final hearing had to be held and the continuance of the hearing over the Defendants' wishes to proceed with an evidentiary hearing contravene Rule 1531(f). Even if, *arguendo*, the Dissent's reference to a court holiday on April 17th extended the final hearing is correct,[11] we still have the Chancellor's failure to

11. We would observe that there was no request by any of the parties at any of the proceedings below that the Chancellor take judicial notice of an April 17, 1992, court holiday to extend the three (3) day mandated period within which a final hearing be conducted when demanded by a defendant. Therefore, absent such a request below, it is improper to inject into the record an alleged fact (which renders the April 20, 1992, hearing timely under Rule 1531(f)) not properly raised by either party or the Chancellor. See *In Interest of:* D.S., 424 Pa.Super. 350, 622 A.2d 954 (1993).

Further, in response to the Dissent's conclusion that the Defendants' freedom of expression claim is unsubstantiated from its review of the record, we would remark that it is somewhat premature to make such a determination in the face of a record which the Dissent concedes is not informative as to *all* of the matter which is subject to enjoinder by the September 4, 1992, Decree. See Dissenting Opinion at 1203, n. 2.

At a Rule 1531(f) hearing, had one been held, all parties would have had the opportunity to present evidence and argue the First Amendment claim, after which the Chancellor would have decided what course to pursue in light of such evidence. For the Dissent to argue otherwise, in advance of the Defendants' presentment of their position on the subject, does an injustice to the litigants.

Finally, we respond to the Dissent's statement that:

... the Majority "puts the proverbial cart before the horse" because it would require that the trial court make factual findings regarding the existence of the oral contract before the injunction could properly issue.... It also concludes that the trial court improperly found that the parties did in fact enter into a contract. This begs the question of whether the trial court was required to hold a Rule 1531 prompt "demand hearing" on the merits in the first place. The trial court ... did not hold factually that a confidentiality agreement was reached in the case.

Dissenting Opinion at 1203. We disagree. By our ruling, we in no way hold either expressly or impliedly that the Chancellor had to make "factual findings" with regard to the existence of the oral contract in advance of issuing an injunction. On the contrary, our position is that the September 4th Decree has inextricably intertwined therein a determination by the Chancellor, in support of the injunction of even date, that the litigants had negotiated *and accepted* the terms of an oral agreement to resolve the dispute. As a result of the *acceptance* of this oral agreement (which is disputed by the Defendants), the Chancellor

conduct *any* final hearing as clearly violative of Rule 1531(f) (". . . after demand by the defendant . . . [i]f the final hearing is not held . . . the injunction shall be deemed dissolved.") and the Explanatory Note thereto ("Upon the filing of the demand, the final hearing must be held. . . . If it is not held, the preliminary or special injunction shall be deemed dissolved.").

Moreover, the Chancellor's September 4, 1992, Decree, having been issued well after the demand for final hearing being scheduled (for April 20, 1992, but never conducted), runs afoul of the 24–hour requirement. This is the period within which a final decree must be issued to avoid a dissolution of the injunction. See Rule 1531(f) (". . . if the final decree is not filed within twenty-four (24) hours after the close of the hearing, the injunction shall be dissolved.").

Lastly, the Chancellor did not file a *written memorandum* within five (5) days after the September 4, 1992, Decree in support thereof. See Rule 1531(f)(3); note 9, supra. Therefore, for the reasons herein stated, we reverse the order appealed.

Order reversed; jurisdiction is not retained.

OLSZEWSKI, J., files a dissenting opinion.

concluded that Rule 1531(f)'s final hearing was not required *and continued in effect* the April 2, 1992, order via the September 4, 1992, Decree.

It is the Chancellor's attribution of *acceptance* to the Defendants, which we read as a predicate for the September 4th Decree, that is the element in the Decree which cannot withstand the light of scrutiny, and we find renders it subject to reversal.

As our discussion supra makes clear on this point, the premise for the Chancellor's determination for not finding Rule 1531(f) applicable to the case was the (alleged) entry of a contractual agreement by the parties to resolve the conflict. The Plaintiffs sought enforcement of this agreement by means of an injunction issued by the Chancellor, who held that an agreement to settle had been *accepted* by the parties *from a review of the pleadings and memoranda.* This was improper in light of a lack of record evidence to support such a ruling. See discussion supra. Therefore, if the predicate for the September 4th Decree is an "oral contractual agreement," whose existence is disputed by the Defendants, it should *not be permitted to stand in the face of* a record not consistent with a Decree using that information as its foundation. Such is what transpired here, and, as a result, renders the September 4th Decree vulnerable to attack.

OLSZEWSKI, Judge, dissenting.

It is only after careful study of the majority's thoughtful opinion that I decide that I cannot join in its disposition. The majority concludes that the trial court improperly denied defendants/appellants' motion to dissolve an injunction against them. It- thus reverses the order and, as I understand it, effectively dissolves the injunction. Since this course of action grants appellants more relief than they are entitled, I must respectfully dissent.

Whether the trial court improperly denied the petition to dissolve because it improperly found facts upon which the injunction was granted, the issue addressed by the majority, is irrelevant to resolve the issues presented by defendants/appellants. It is undisputed that there has never been a hearing on the merits of the underlying contract in this case. The only relevant question, as I see it, is whether defendants were entitled to a prompt hearing under Rule 1531(f) of the Pennsylvania Rules of Civil Procedure. If they were, the injunction dissolved as a matter of law for want of an actual hearing. On the other hand, if they were not, no prompt hearing was necessary and the petition to dissolve was properly denied.

The salient facts are amply stated by the majority but deserve brief recitation here. Plaintiffs filed an action against defendants seeking to enforce an oral settlement. Allegedly, defendants, fruit moguls, orally agreed to accept a sum of money in return for their promise to drop existing lawsuits in Chile and the United States, forebear from filing a civil RICO action in the United States, and keep confidential any information surrounding the circumstances which gave rise to the actual and potential actions. On April 2, 1992, defendants agreed to an order enjoining all parties from disclosing any information relevant to the proceeding (in other words, defendants were enjoined from disclosing information which was allegedly subject to the oral settlement). On April 14, defendants demanded a hearing pursuant to Pa.R.C.P. 1531(f), which provides:

When a preliminary or special injunction involving freedom of expression is issued, either without notice or after notice and a hearing, the court shall hold a final hearing within three (3) days after demand by the defendant. A final decree shall be filed in the office of the prothonotary within twenty-four (24) hours after the close of the hearing. *If the final hearing is not held within the three (3) day period, or if the final decree is not filed within twenty-four (24) hours after the close of the hearing, the injunction shall be deemed dissolved.*

Pa.R.C.P., Rule 1531(f), 42 Pa.C.S.A. (emphasis added).

Although plaintiffs disputed whether the injunction enjoining defendants necessarily involved "freedom of expression" within the meaning of the Rule, the parties agreed to hold the "demand hearing" on Monday, April 20.[1] That Monday, plain-

---

1. The third day under Rule 1531(f) was Friday April 17, a court holiday. Since all parties agreed to the April 20 hearing date, the next possible court date, the "demand hearing" was timely.

   Although the learned author of the Majority Opinion argues that there is no factual basis for this conclusion in the record, *see* Majority Opinion at p. 1202, n. 11, we must, most hesitantly, disagree. On April 14, 1991, the following colloquy took place:

   Mr. Rutter [counsel for plaintiffs]: Your Honor, may I suggest that we pickup where we left off yesterday afternoon, which is, I take it, there has now been a demand by the defendants within the meaning of Rule 1531F1 for a final hearing? Without agreeing that this is appropriately within the meaning of the definition of 1531F1, if we deem the demand made as of today the three day limit for the hearing runs on Friday, which is a court holiday, which means it goes to the next official court day, which means Monday, and I'm prepared to start trial Monday morning at 10 o'clock.

   The Court: Are you prepared?

   Mr. Rutter: Yes, sir. I have contacted my witnesses and they're coming from Colorado, Washington, and Chile, but they will be here by Monday morning.

   It was your inquiry, if I remember, Judge Della Porta, at the end of our conference in chambers yesterday as to why shouldn't we try the case and Mr. Thall [defendants' counsel] said he agreed the case should be tried. I've now been able to solve my witness problem, sir. That's why I report to you.

   The Court: Does it solve a problem?

   Mr. Thall: It solves it to a degree. Just so the record is clear, I did submit yesterday, Your Honor, among the four documents which I did submit was a form order together with a demand for a final hearing under 1531F1, the bases being that under the rule, the order

tiffs were prepared to submit evidence and present witnesses (many of whom traveled long distances to attend the hearing) on the merits of the oral contract issue. Defendants, however, insisted that they were entitled to pursue investigation of plaintiffs' alleged criminal conduct with the United States Attorney's office, despite any "confidentiality" provisions in the alleged agreement. Plaintiffs therefore alerted the Court that since an agreement, if any, to keep criminal activity confidential is void as against public policy, a hearing would be best reserved until the criminal matters were resolved. N.T. 4/20/92, at 105–117. The Court agreed, issued a continuance, and ordered a recess until it heard from defendants' counsel or the United States Attorney's Office. *Id.* at 117. After no activity of record for nearly five months, the court entertained defendants' petition to dissolve. Defendants argued, as they do on this appeal, that the injunction dissolved as a matter of law under Rule 1531, because the court had not held the mandatory hearing on the April 2 injunction. *See* N.T. 8/31/92. The court entered its order denying the petition to dissolve on September 4, 1992:

> And now, this 4th day of September, 1992, upon consideration of Defendants' Motion to Dissolve a Confidentiality Injunctive Order of April 2, 1992 by this Court, Plaintiffs' response thereto, as well as other memoranda and oral argument thereon, it appearing that:
>
> 1. The provisions of Pennsylvania Rule of Civil Procedure 1531(f) are inapplicable and, therefore, unenforcea-

which is now in place, signed by Your Honor on April 2, in our view, is a preliminary or special injunction involving freedom of expression, since the provisions of the order preclude my clients from communicating with anyone about there [sic] claims, other people's claims or pursuing discovery, *we're ready to go on Monday.*

\*    \*    \*    \*    \*    \*

The Court: All right. It would seem to me that to a great extent I think that would best resolve the problem that may exist. We'll go on with trial Monday morning.

N.T., 4/14/91 at pp. 4–5 (Reproduced Record, pp. 283–284) (emphasis added). Since both parties agreed to the Monday hearing date, we respectfully disagree that we have "inject[ed] into the record an alleged fact ... not properly raised by either party or the Chancellor." Majority Opinion, p. 1202, n. 11.

ble in contractual confidentiality agreements which have been negotiated, accepted and entered into by the parties for the purpose of attempting to reach a settlement in the underlying claim; and

2. The language of the Order in question was specifically agreed to by Defendants' counsel in his letter of March 31, 1992 to this Court;

it is hereby ordered that said motion is denied.

Under Rule 1531(f), a court must hold a prompt hearing upon demand of an enjoined party if a preliminary injunction "involves freedom of expression" and was issued "without notice or after notice and a hearing." Pa.R.C.P., Rule 1531(f), 42 Pa.C.S.A. This procedural rule was promulgated by our Supreme Court to ensure that our trial courts exercise "the necessary sensitivity to freedom of expression." *Duggan v. 807 Liberty Ave., Inc.*, 447 Pa. 281, 288 A.2d 750 (1972).

> In order to minimize prior restraints on protected speech *and to provide prompt adjudication of First Amendment questions*, this Court in 1973 adopted Pa.R.C.P. 1531(f), which provides that when a court issues a preliminary injunction involving freedom of speech, the defendant may demand that a final hearing be held within three days and that a final decree be filed within twenty-four hours after the close of the hearing.

*Ranck v. Bonal Enterprises, Inc.*, 467 Pa. 569, 576, 359 A.2d 748 (1976) (emphasis added).

After reviewing the few cases that discuss the application of the rule, it is apparent that it is designed to prohibit prior restraints of speech where the underlying claim involves a judicial determination of whether the challenged speech is protected by the First Amendment. *Duggan, supra* (district attorney sought to enjoin movie house from showing allegedly "obscene" movies); *Ranck, supra* (same); *School District of Pittsburgh v. Pittsburgh Federation of Teachers, Local 400*, 486 Pa. 365, 406 A.2d 324 (1979) (school district sought injunction against teachers for engaging in allegedly illegal picketing). The rule requires only a showing that the restrained

speech *involves* freedom of expression because "until a final hearing is held, it is not known whether the prohibitions of the preliminary injunction prohibit constitutionally protected freedom of expression." *School District of Pittsburgh*, 486 Pa. at 373, 406 A.2d at 327–328. To require proof of the unconstitutionality of the speech in order to preliminarily restrain the speech "put[s] the proverbial cart before the horse." *Id.* at 373, 406 A.2d at 328.

Here, the majority "puts the proverbial cart before the horse" because it would require that the trial court make factual findings regarding the existence of the oral contract before the injunction could properly issue. Majority opinion, at 54. It also concludes that the trial court improperly found that the parties did in fact enter into a contract. This begs the question of whether the trial court was required to hold a Rule 1531 prompt "demand hearing" on the merits in the first place. The trial court, as I interpret its order, did not hold factually that a confidentiality agreement was reached in this case. Rather, it held, and I agree, that the underlying claim of this case involves an issue of contact interpretation. It does not involve resolution of whether the First Amendment protects the type of speech in which defendants wish to engage. In other words, the case is one of contractual, not constitutional, proportion. The prompt hearing requirements of Pa. R.C.P.Rule 1531(f) therefore did not apply, and the injunction did not automatically dissolve without a hearing. *Duggan, Ranck, School District of Pittsburgh, supra.*[2]

---

**2.** Additionally, I must note that my review of the record, while not disclosing the true nature of all of the information which is subject to the injunction, indicates that the "expression" in which defendants wish to engage—exclusive of the criminal accusations, which have already been disclosed to the United States Attorney—hardly amounts to "political speech," the type of expression to which traditional First Amendment protection attaches. At best, the "expression," dissemination of information regarding plaintiffs' conduct and filing a federal civil RICO action against plaintiffs, amounts to an attempt to assert an economic advantage over plaintiffs. I would liken this to "commercial speech," which gives rise to more limited First Amendment protection. Therefore, the "sensitivity to freedom of expression" embodied by Rule 1531(f) is not truly implicated. Here, if the injunction is dissolved, the

More importantly, however, the court's April 2 preliminary injunction was not one that was issued "without notice or after notice and a hearing." It was issued upon defendants' consent. Therefore, even if the injunction could properly be regarded as involving "freedom of expression," I would hold that the entry of a consensual injunction waived defendants' right to demand a prompt hearing: "The defendant always has the option to decline this special procedure [as set forth in Rule 1531(f) ] and to proceed ... by any other techniques available in the ordinary equity action." Pa.R.C.P.Rule 1531, Explanatory Comment. It would be anomalous to allow defendants to assure plaintiffs that they would not disclose "confidential" information until the court has reached the merits of the issue in due course, and at the same time allow them to determine when the hearing on the merits will be held. This procedure has incredible potential for abuse. Thus, I would hold that the trial court's reasons for denying defendants' petition to dissolve were sound.

Finally, there is nothing in this record to indicate that the trial court did not act with the "necessary sensitivity" toward defendants' "freedom of expression." Both the trial court and plaintiffs were ready, willing, and able to finally dispose of the merits of the case on April 20, 1992. When defendants insisted they had every right to disseminate information to the United States Attorney General's Office despite the existence of any alleged contract, the trial court continued the proceedings until the criminal investigation was completed.[3] As the trial court noted: "Again, it was one of your [defense counsel's] objections" that kept the hearing from going forward. N.T. 4/20/92 at 110.

information may be disclosed forever, and even if there was an enforceable confidentiality agreement, plaintiffs will lose the benefit of their bargain before any court ever rules on the contract. Therefore, the majority decision allows defendants to subvert the very judicial process they apparently wish to employ for redress in the future.

**3.** Notably, the record does not indicate that any action has been taken by the United States Attorney in this regard since the April 20 "dissemination."

Given all of the factors above: defendants' failure to demonstrate that the underlying dispute implicates the First Amendment, their consent to the preliminary injunction, and defendants' insistence that they proceed to the United States Attorney's Office during the pendency of the litigation of the oral contract on the merits, I cannot conclude that the trial court's failure to hold the final hearing on the merits on April 20 resulted in automatic dissolution of the preliminary injunction. The majority's disposition—reversal of the denial of the petition to dissolve—allows the defendants to deny the existence of plaintiffs' lawsuit and disclose information which they very well might have agreed to keep confidential. If this does occur, why should the court ever reach the merits of plaintiffs' case? I would affirm the order of the trial court and remand for further proceedings.

Accordingly, I respectfully dissent.

### ORDER

**AND NOW,** this 7th day of April, 1994, Appellees' Application to Discontinue is **GRANTED** to allow the discontinuance of the application for reargument. Appellees' Application to Discontinue is **DENIED** insofar as it requests discontinuance of the appeal. The Opinion of this court entered September 24, 1993 is hereby ordered **REINSTATED.**