**Thomas C. Lowry P.C. v. Vaughan**

C.P. of Montgomery County, no. 96-07684.

*Keith B. McLennan,* for plaintiff.
*Jane M. Shields* and *Richard A. O'Halloran,* for defendant.

ROSSANESE, *J.,* May 15, 1997—

## FACTS AND PROCEDURAL HISTORY

On April 26, 1996, plaintiff/appellee, Thomas C. Lowry P.C., filed a complaint in law and equity requesting injunctive relief for defendant's tortious interference with plaintiff's contractual relationships with his clients. Plaintiff is a Pennsylvania professional corporation engaged primarily in workers' compensation defense. Thomas C. Lowry founded the firm in 1989 and is the president and 100 percent shareholder of the same.

On or about October 21, 1991, the defendant/appellant, Joseph E. Vaughan, entered into an employment contract with the plaintiff. Further, from that point until December 7, 1995, appellant signed what became a series of annual employment contracts ending with the law firm agreement dated December 7, 1995. These employment contracts provided that, upon termination of their relationship, neither party would solicit nor accept work from each other's clients as identified in the agreement. On March 22, 1996, appellant voluntarily tendered his resignation with the firm and on May 1, 1996, appellant voluntarily left that employment.

On April 26, 1996, after a conference with both parties in chambers, we granted a temporary restraining order against appellant enjoining him, his agents, associates or employees from, inter alia, soliciting or accepting clients developed by plaintiff and identified in the law firm agreement dated December 7, 1995. (See April 26, 1996 order and exhibits.) Plaintiff posted bond required by the temporary restraining order on May 2, 1996.

On May 9, 1996, we held a conference on plaintiff's petition for a preliminary injunction. At this conference, appellant's counsel waived a hearing on the matter and

agreed, instead, to submit stipulations of fact, affidavits and briefs. On June 12, 1996, after reviewing the submitted documents, we issued an order granting the preliminary injunction. (See June 12, 1996 order.)

On October 16, 1996, after oral argument and review of briefs, we denied appellant's motion to declare the aforementioned preliminary injunction dissolved and to compel mediation, thereby prompting the present appeal.

## DISCUSSION

Rule 311(a)(4) states, "[a]n appeal may be taken as of right and without reference to Pa.R.A.P. 341(c) from: Injunctions. An order granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except for injunctions pursuant to sections 3323(f) and 3505(a) of the Divorce Code, 23 Pa.C.S. §3323(f) and 3505(a) Thus, appellate review is proper in the case sub judice.

Appellant asserts that it was error for us to deny his petition to compel mediation. Appellant cites us to paragraph 21 of the agreement to bolster his argument that the proper forum is mediation or arbitration and that we lacked jurisdiction to grant the injunction. The relevant paragraph reads,

"(21) Submission to lawyer dispute resolution program of the Pennsylvania Bar Association. Any controversy or claim arising out of or relating to this agreement or the breach thereof or relating to the handling of the client files subsequent to termination of this agreement, shall be settled through mediation conducted in accordance with the then-existing Rules of the Pennsylvania Bar Association lawyer dispute resolution program. Any issues that are not resolved through such mediation shall be submitted for arbitration conducted

in accordance with the then-existing Rules of the PBA program and judgment upon the award rendered may be entered in any court having jurisdiction thereof." (See December 7, 1995 agreement, paragraph 21.)

However, appellant ignores paragraph 12 of the same agreement which states,

"It is further agreed that any breach or evasion of any of the terms of the contract by the attorney will result in immediate and irreparable injury to the firm, and will authorize recourse to injunction or specific performance as well as to all other legal or equitable remedies to which such injured party may be entitled hereunder." (See December 7, 1995 agreement, paragraph 12.)

After reviewing both of the aforementioned provisions as well as the applicable case law, we determined that paragraph 12 governed. In *PBS Coal Inc. v. Hardhat Mining Inc.,* 429 Pa. Super. 372, 377, 632 A.2d 903, 905 (1993), the court held that "if an agreement or contract clearly includes or excludes particular issues or remedies from arbitration, a court may so hold without submitting these matters to arbitration." As indicated *supra,* paragraph 12 of the agreement expressly authorizes the parties to resort to the court to seek injunctive relief where the conduct of the breaching party causes immediate and irreparable harm. Thus, we read paragraph 12 to mean that injunctive relief was exclusive of the PBA program, especially given the fact that the PBA is limited to mediation and arbitration of disputes and does not have the authority to issue injunctive relief. Accordingly, we properly entertained the plaintiff's request for a preliminary injunction.

In his next allegation of error, appellant contends that we improperly denied his petition to declare the preliminary injunction dissolved. According to the appellant, the June 12, 1996 injunction dissolved by op-

eration of law when we did not give him a hearing as required by Pennsylvania Rule of Civil Procedure 1531(f)(1). Rule 1531(f)(1) reads,

"When a preliminary or special injunction involving freedom or expression is issued, either without notice or after notice and a hearing, the court shall hold a final hearing within three days after demand by the defendant. A final decree shall be filed in the office of the prothonotary within 24 hours after the close of the hearing. If the final hearing is not held within the three day period, or if the final decree is not filed within 24 hours after the close of the hearing, the injunction shall be deemed dissolved."

However, after review of *Sociedad Comercializadora y De Servicios Unifrutti Traders Limitada, a/k/a Unifrutti Traders Limitada v. Quizada,* 434 Pa. Super. 48, 59, 641 A.2d 1193, 1197 (1993), we determined that appellant did not fall within the confines of Rule 1531(f)(1). In *Sociedad,* the court reversed the trial court and determined that an oral confidentiality agreement did not exist between the parties. However, the appellate court went on to say that had such a confidentiality agreement existed between the parties, that confidentiality agreement would have constituted a waiver of the expression issues and rendered Rule 1531(f)(1) inapplicable. *Id.*

In our case, there is no dispute that there is a written agreement in place between the parties wherein they waived their right to free expression. In paragraph 14 of the December 7, 1995 law firm agreement, the appellant waived his right to free expression. Paragraph 14 reads:

"(14) Handling of cases and clients on termination

"(a) Restrictive provisions. In the event of termination of this agreement other than due to the death or disability of the attorney and subject to the Rules of Professional

Conduct for attorneys in the Commonwealth of Pennsylvania, it is the intention of the firm and the attorney that legal clients which have been developed by the attorney shall remain the clients of the attorney and that the legal clients of the firm shall remain the legal clients of the firm. The parties acknowledge that they may not legally require a client to adhere to this allocation, however and except as provided herein below with respect to matters existing at the time of termination, for a period of 12 months following termination, the attorney shall neither solicit nor accept any work as an attorney, whether compensated or otherwise, from any of the clients of the firm as identified on . . . exhibit 'A' and also including any clients of the firm developed subsequent to the execution of this agreement. The foregoing restrictions shall be applicable to the firm whether he is practicing law in his own office, as an attorney with a firm, regardless of how organized, or as employee of any of the firm's clients. Subject to the provisions hereinafter regarding matters existing at the time of termination, for 12 months from termination of this agreement, the firm, including any attorney employed by the firm, shall neither solicit nor accept work as an attorney, whether compensated or otherwise, from any of the attorney's clients as identified on . . . exhibit 'B' and such other clients developed by the attorney after the execution of this agreement. In the event of a material breach of the foregoing restrictive provisions the parties hereby agree to liquidated damages equal to the then-current base compensation (without considering any compensation bonus or fringe benefit or retirement payments) payable to the attorney at the time of termination of this agreement."

Thus, when appellant signed the above agreement as well as three previous agreements with similar lan-

guage, he voluntarily agreed not to communicate with plaintiff's clients and in so doing, appellant agreed to a limitation on any such freedom of expression, speech and/or association. Accordingly, Rule 1531(f) does not apply to the case at bar.

In addition, appellant through his counsel, voluntarily waived his right to a preliminary injunction hearing. On May 9, 1996, we held a conference on plaintiff's petition for a preliminary injunction. At this conference, appellant's counsel waived a hearing on the matter and agreed, instead, to submit stipulations of fact, affidavits and briefs. Appellant's waiver is evidenced not only by the word of this court, but also by the fact that appellant submitted the stipulations of fact, affidavits and briefs in accordance with the waiver.

We will next address the appellant's contention that our June 12, 1996 order is invalid and contrary to law because there was an adequate remedy at law; the posting of bond was not required; we refused to hear evidence proffered by the defendant on June 8, 1996; the preliminary injunction is unlimited in duration; the preliminary injunction is overly broad; the preliminary injunction violates public policy and the Rules of Professional Conduct; and the preliminary injunction's terms exceed the terms of the agreement.

Appellant states that an injunction is improper because plaintiff has an adequate remedy at law with liquidated damages. Appellant incorrectly assumes that the two are mutually exclusive. As stated in *Joseph D. Shein P.C. v. Myers,* 394 Pa. Super. 549, 576 A.2d 985 (1990), injunctive relief and an award of money damages are consistent and concurrent remedies. In *Shein,* the plain-

tiff was awarded both injunctive relief and money damages, including punitive damages for a group of breakaway attorneys' tortious interference with Shein's contractual relationship with its clients. In addition, it is not whether damages can be calculated with certainty that makes an injunction appropriate or not, it is whether the money damages can adequately compensate the plaintiff for the gross injustice caused by the defendant's wrongs. *Churchill Corp. v. Third Century Inc.,* 396 Pa. Super. 314, 578 A.2d 532 (1990). Money damages won't make the plaintiff whole in this case. Even if accurately calculable, money could not replace a client base developed by the plaintiff over the years. For, that client base would not only continue to perpetuate financial gain for the plaintiff over the years, but the client base would also generate more business through referrals. Thus, we properly granted injunctive relief despite the liquidated damage clause in the agreement.

Next, appellant argues that the injunction was improper because we did not require the posting of bond. This is incorrect. In accordance with our April 26, 1996 temporary restraining order, bond was posted on May 2, 1996, and remains in effect. Thus, appellant's argument as to the bond issue also fails.

In addition, appellant alleges that we refused to hear evidence proffered by him on June 8, 1996. We refused to hear evidence proffered by the appellant on June 8, 1996, because as indicated *supra,* appellant agreed to waive a preliminary injunction hearing and submit his argument on briefs. Consequently, we would not entertain this additional evidence submitted in contravention of the parties' agreement. In addition, based on the aforementioned agreement, we did not allot any

time in our schedule for such a conference/hearing, and refused to interrupt our other scheduled matters to entertain the same.

Appellant also states that the preliminary injunction is overbroad. This is not so. Our injunction is specific to those clients and files cited on the list appended to the agreement, an agreement which the appellant voluntarily signed. Further, the preliminary injunction does not exceed the terms of the agreement; it references the agreement, thereby indicating the 12-month duration as stated in the same.

Next, appellant argues that the preliminary injunction is in error because the underlying agreement not to solicit or accept each other's clients violates Rule of Professional Conduct 5.6, and is void against public policy. That is, according to the appellant, paragraph 14(a) of the agreement cited in full *supra,* p. 4, violates the freedom of clients to choose counsel and of counsel to practice law.

Rule of Professional Conduct 5.6, Restrictions on Right to Practice states,

"A lawyer shall not participate in offering or making:

"(a) a partnership, shareholder, operating, employment or similar type of agreement that restricts the rights of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or

"(b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a controversy between private parties." (emphasis supplied)

The comments to Rule 5.6(a) further indicate that agreements which restrict the right of partners or associates to practice after leaving a firm not only limit their professional autonomy but also limit the freedom of clients to choose a lawyer. And while we submit that the above is a correct recitation of Rule 5.6, we determined that the agreement at issue did not violate the same.

The parties' agreement does not restrict the attorney/appellant's right to practice law. This is evidenced by the fact that appellant has been practicing law with the firm of Siana, Shields & Vaughan since shortly after he left the appellee's employ. In addition, but for the small enumerated list of clients in the agreement, appellant can solicit any client he wishes. Further, the agreement is limited to a 12 month duration. Thus, once the 12 months expire, appellant can also solicit those clients on the list. Finally, the agreement provides the appellant protection for his own client base by preventing appellee from soliciting appellant's clients for 12 months. Thus, it can be argued that the agreement actually encourages the appellant's success and continued practice of the law.

Further, the agreement does not infringe on a client's right to choose a lawyer. The agreement limits the attorney's right to accept certain specified clients. This distinction must be acknowledged. That is, any of the listed clients may attempt to retain any attorney he or she likes, including the appellant. However, it should not be forgotten that every attorney has the discretion to accept or reject a new client. Attorneys reject cases on a daily basis due to conflict of interest, lack of specialty in a particular field and even a cost benefit

analysis.[1] And, when appellant voluntarily signed the agreement, he contracted away that discretion to accept the listed clients. Thus, it was the attorney's ability to accept, rather than the client's ability to choose that was limited by the agreement. Therefore, the clients in question are not prejudiced by one attorney out of many exercising his discretion, and refusing to take his or her case due to the aforementioned contractual obligation. For, as explained previously, no client is guaranteed representation by counsel of his or her choosing.

Finally, it should be noted that paragraph 14 of the agreement in question actually references the Rules of Professional Conduct. Paragraph 14 begins with the phrase, "[i]n the event of termination of this agreement other than due to death or disability of the attorney and subject to the Rules of Professional Conduct for Attorneys in the Commonwealth of Pennsylvania," thereby indicating that when the parties drafted and executed the agreement, the parties were not only aware of the rules, they drafted their agreement in accordance with the rules.

In his last allegation of error, appellant suggests that there was not sufficient evidence to support the findings of fact in our June 12, 1996 order. We disagree. There was ample evidence to support our findings as well as for the issuance of a preliminary injunction.

The trial court has broad discretion to grant or deny a preliminary injunction. *WPNT Inc. v. Secret Com-*

---

1. See Rule 1.6 Confidentiality, 1.7 Conflict of Interest, 1.8 Business Transactions, 1.9 Former Clients, 1.10 Imputed Disqualification, 1.11 Successive Government and Private Employment.

*munication Inc.,* 443 Pa. Super. 269, 271, 661 A.2d 409, 410 (1995). Further, a preliminary injunction will be granted only where there is threat of immediate and irreparable harm that cannot be remedied by damages; where the injury that would result by denying the injunction is greater than the injury from granting the relief; and where the grant of the injunction will restore the parties to the situation as it existed prior to the alleged wrongful conduct. *Schaeffer v. Frey,* 403 Pa. Super. 560, 565, 589 A.2d 752, 755 (1991).

In our case, the evidence showed that after the appellant left the plaintiff's employment, appellant solicited the plaintiff's clients as listed in the agreement. In fact, appellant does not contest this fact. Rather, he argues that he cannot, and will not, abide by the terms of the agreement because the agreement's terms are in direct contravention of Ethical Rule 5.6. First and foremost, as explained thoroughly *supra,* we determined that the agreement is not in violation of Ethical Rule 5.6. Further, appellant seems to argue that he must actively violate the terms of the agreement in order to uphold the Ethical Rules. That is, appellant did not choose to address the ethical issue if and when one of plaintiff's clients requested his representation. Rather, he actively sought plaintiff's clients' business. Finally, while we would otherwise applaud an attorney's respect and regard for the Ethical Rules, we found the appellant's reverence to be insincere. Appellant seems to cite to Rule 5.6 as a matter of convenience. To explain, appellant did not state that the agreement violated Rule 5.6 when he signed the first agreement stating that neither the firm nor he would solicit each other's clients upon termination of the relationship. Appellant did not

state that the agreement violated Rule 5.6 when he signed the second agreement indicating the same. Nor did appellant make this argument when he signed the third agreement. Instead, appellant chose to enforce the Ethical Rules only after he left the plaintiff's firm, solicited the plaintiff's clients, and was hauled into court for his actions. Then, and only then, did Ethical Rule 5.6 become important.

Further, appellant's citation to the Ethical Rules is inconsistent with his advocacy style in this case. Appellant has disregarded our orders, and once attempted ex parte communication with chambers via letter.[2] Thus, although appellant professes to have a high regard for the Ethical Rules, he has demonstrated little regard for judicial orders.

Given appellant's meritless argument that the agreement is void as against public policy and Ethical Rule 5.6, as well as his questionable pattern of advocacy throughout this action, we determined that an injunction was necessary to prevent immediate, irreparable harm to the plaintiff. Further, as explained *supra,* money damages cannot restore the plaintiff's client base.

Secondly, we determined that there would be a greater injury suffered if we denied the injunction than if we granted the relief. Had we denied the injunction, appellant would have continued to disregard the agreement and actively attempt to solicit the plaintiff's clients, which clients were a substantial part of plaintiff's practice. Indeed, this was evidenced by the fact that appellant

2. See trial court docket, 11/08/96, 12/09/96, 12/27/96, 3/14/97, plaintiff's petitions for contempt. Also see, our order dated October 16, 1996.

continued to solicit plaintiff's clients even after we entered a temporary restraining order regarding the same. Such a result would not only be inequitable, it would make a mockery of written contracts voluntarily entered into by competent, knowing individuals. This is especially true where the parties are attorneys who are fully aware of the responsibilities involved in entering into a binding contract such as the one at bar.

Third, the preliminary injunction restored the parties to status quo. When we issued the injunction, we placed both parties in exactly the position that existed prior to appellant's breach of the agreement, namely, neither party was to solicit each other's clients. Appellant was in no way prejudiced by such a result. He was permitted to maintain and represent the clients that he developed and identified as his own in the agreement. And, plaintiff was permitted the same. Therefore, appellant's position did not change as a result of our order, and the preliminary injunction was properly entered.

Accordingly, for the foregoing reasons, our order of October 16, 1996, should be affirmed.