**Margaret FARRIS, et al., Plaintiffs,**

**v.**

**J.C. PENNEY CO., Defendant.**

**No. CIV.A. 95–7432.**

United States District Court, E.D. Pennsylvania.

April 15, 1998.

Timothy P. Booker, Richard P. Abraham, Philadelphia, PA, for Plaintiffs.

Renee Berger, William Foster, Philadelphia, PA, for Defendant.

**MEMORANDUM AND ORDER**

ANITA B. BRODY, District Judge.

Plaintiffs Margaret and Charles Farris, husband and wife, have filed a motion to set aside the settlement and 41.1(b) dismissal order entered in this case, asserting that they did not authorize their attorney to settle the case. After an evidentiary hearing on February 25, 1998 and briefing by the parties, I have determined that, while plaintiffs have established that this case was settled without their actual authority, they have not produced evidence sufficient to demonstrate that this case was settled without apparent authority, an alternative ground for enforcing settlements under Pennsylvania law, the applicable law in this diversity action. I therefore conclude, for reasons set forth below, that plaintiffs have not shown cause, as required by Fed.R.Civ.P. 60(b), to vacate the judgment of dismissal entered in this action.[1]

A. Background

Plaintiffs brought this personal injury action against J.C. Penney Co., for damages arising out of injuries allegedly sustained by Margaret Farris after a fall at a Penney's store in downtown Philadelphia on April 15, 1995. Plaintiffs were represented by attorney Timothy Booker ("Booker"). The case, originally assigned to Hon. John P. Fullam of this court, went to jury trial on September 25, 1996. After one full day of testimony, the parties entered into settlement negotiations on the morning of September 26, 1996. At some point on that day, the attorneys informed Judge Fullam that a settlement had been reached. The attorneys and parties were re-called to the courtroom, and the settlement was placed on the record with all parties present. An order dismissing the case pursuant to Local Rule 41.1(b) was issued on September 26, 1996.

On October 7, 1996, Booker filed a motion to enforce the settlement, in which he assert-

1. This case was dismissed per Local Rule 41.1(b), which provides that the dismissal made be set aside on a showing of cause made within 90 days of the entry of the order. The 41.1(b) order was issued on September 26, 1996, and plaintiffs' motion to set aside the dismissal was not filed until January 24, 1997, after the 90 days had elapsed, but while the motion to enforce the settlement, filed by plaintiffs' original attorney, was still pending. The motion to vacate the dismissal was filed pursuant to Fed.R.Civ.P. 60(b), which has similar requirements for a showing of cause, *ILA Local 1332 v. ILA*, 940 F.Supp. 779, 780, n. 2 (E.D.Pa.1996), and whose filing deadlines supersede those contained in the local rules. Defendant did not raise timeliness as an issue in this case, and Booker has no standing to raise the issue.

ed that the case had been settled, that the settlement was placed on the record with plaintiffs present, and that plaintiffs now refused to sign the release.[2] Booker also requested, as part of his motion, that the proceeds of the settlement be deposited in an escrow account with the court. On January 13, 1997, a hearing was held on the motion to enforce the settlement. During the hearing, Judge Fullam indicated that he might be needed to testify in this matter, and recused himself. The case was then reassigned to me.

On January 22, 1997, attorney Richard Abraham ("Abraham") entered his appearance on behalf of plaintiffs.[3] On January 24, 1997, Abraham, on behalf of plaintiffs, filed a motion, under Fed.R.Civ.P. 60(b), for relief from dismissal, asserting that the case had been settled without their consent or authorization.[4] After protracted, and ultimately successful, efforts by Abraham to take Booker's deposition and examine his file for this case, an evidentiary hearing on the motion for relief from dismissal (i.e., to set aside the settlement) was held on February 25, 1998. The following constitute my findings of fact and conclusions of law with regard to this motion.

## B. Findings of Fact

1. Plaintiffs Margaret and Charles Farris entered into a contingent fee agreement with Timothy Booker, Esquire, in which Booker agreed to represent the Farrises in their personal injury action against J.C. Penney Co. arising out of the incident on April 15, 1995, and they agreed to pay him 40% of the gross fund recovered through suit or settlement.

2. The contingent fee agreement purported to authorize Booker to "bring suit or to settle and compromise the said claim as he sees fit and on his own without further discussions with" the Farrises, although such language is most likely insufficient, under Pennsylvania law, to authorize an attorney to enter into a settlement agreement on the client's behalf.[5]

3. On September 5, 1996, plaintiffs requested that the trial of this matter be continued because Mrs. Farris was still receiving medical treatment. The request for a continuance was denied and the trial began on September 25, 1996.

4. Judge Fullam bifurcated the trial, with liability to be determined first, and then damages. The record does not reveal whether the damages portion of the trial, if necessary, was to be immediately after the damages portion or at some later date.

5. Booker had not made arrangements to have any experts testify, in person or via videotape, in the event that the trial went to the damages phase.

2. Booker's motion to enforce the settlement was docketed as plaintiffs' motion, although Booker was taking a position adverse to his clients' stated interests at that point. The record does not indicate that Booker informed his clients of this conflict before filing the motion, or that he advised them to seek other counsel to advise and/or represent them. See, generally Rule of Professional Conduct 1.7.

3. Attorney Booker has never withdrawn his appearance from the case, and continued to file papers docketed as "plaintiffs' motion for ...", with the result that the docket is very confusing to read, as the motion practice appears to be between plaintiffs and themselves.

4. Booker's motion to enforce the settlement was withdrawn on March 21, 1997.

5. The mere fact of representation is not sufficient to authorize an attorney to compromise an action on the client's behalf, *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983), and it is doubtful that the Pennsylvania Supreme Court would uphold a settlement based solely on such a blanket authorization. At the hearing on February 25, 1998, Booker denied that he was governed by this paragraph, and testified that Mrs. Farris had informed him in writing that she wanted to be consulted regarding any possible settlement of her claim, but he could not locate the letter. In his brief submitted after the hearing, Booker appeared to rely on that same provision as giving him authority to settle without Mrs. Farris' consent.

Since Booker is not representing a party with regard to the motion to vacate the dismissal, and since defendant does not rely on this language in the contingency agreement as part of its opposition to the motion, I need not determine whether such broad language could ever be construed to authorize an otherwise unauthorized settlement of a claim. I do note, however, that Booker's contradictory positions make him a less than credible witness.

6. Prior to the beginning of trial, Booker had not communicated a settlement demand to defendant.

7. On the second day of trial, September 26, 1996, the attorneys met with Judge Fullam to discuss settlement. At some point on the morning of the 26th, Booker and the Farrises met with Judge Fullam, without defendant or defendant's attorney present. Judge Fullam then met with defendant's attorney, Renee Berger ("Berger"), without Booker or the Farrises present. Judge Fullam then met with both Booker and Berger, and asked Berger if she could get authority for $20,000. Berger asked if that figure would settle the case, and Judge Fullam said that it would.

8. Berger then called her client and received authority to offer $20,000, with the understanding that that figure would settle the case. Berger communicated this figure to Booker, who she then observed go into a witness room with the Farrises, or at least Mrs. Farris, for approximately five minutes.

9. At some earlier point during the morning of the 26th, Booker discussed a settlement offer of $10,000 with Mrs. Farris. She rejected the offer, and repeated her concern to Booker that the case not be settled before her medical treatment was completed, as she did not know what her expenses would be.

10. Berger saw Booker go into a witness room with the Farrises on at least one occasion on the morning of the 26th. She also observed the Farrises and Booker go into Judge Fullam's chambers at some point on the 26th.

11. At some point after Berger conveyed the $20,000 figure to Booker, Booker informed Berger that the $20,000 offer was accepted.

12. Neither Mr. nor Mrs. Farris authorized Booker to accept the $20,000 offer.

13. The attorneys then notified Judge Fullam that a settlement had been reached.

14. The Farrises, after returning from lunch, returned to the courtroom without speaking to Booker, and sat at plaintiffs' counsel table. Booker and Berger returned to the courtroom. When Judge Fullam returned to the bench, the following was placed on the record:

THE COURT: Good afternoon. What can I do for you?

MS. BERGER: Your Honor, we have resolved this matter for 20,000.

MR. BOOKER: That is correct, Your Honor.

THE COURT: Do you want to get anything on the record?

MS. BERGER: Yes. I would like to just get it on the record that we have agreed to settle this matter for $20,000.

THE COURT: Defendant will pay $20,000?

MS. BERGER: Will pay $20,000 to Plaintiff. the Plaintiffs will be responsible for all medical bills and Plaintiffs' costs and Defendant will be—

THE COURT: Total settlement of $20,000?

MS. BERGER: That is correct.

THE COURT: Is that correct Mr. Booker?

MR. BOOKER: Yes.

THE COURT: I notice the Plaintiffs are present in court.

(Transcript, 9/26/96).

15. The jury was then recalled into the courtroom and dismissed. The Farrises were present in the courtroom while Judge Fullam informed the jury that the case had settled and that they were dismissed. The Farrises and Booker then left the courtroom. Mrs. Farris said to Mr. Booker, "Why did you do this to me?" Mrs. Farris testified that Mr. Booker replied, "Someday you will thank me." Booker then left.

16. Berger remained in the courtroom to speak to the jurors. After a few minutes, Mrs. Farris returned to the courtroom, approached the jury box, where some jurors remained, and said that she had not given Mr. Booker permission to settle her case.

17. On September 26, 1996, Judge Fullam issued a 41.1(b) order dismissing the case. Berger then prepared a general release which she forwarded to Booker for his clients' signature.

18. The Farrises never signed the release, and the settlement check has never been issued.

19. The Farrises discharged Mr. Booker at the end of November, 1996, and retained the services of Richard Abraham ("Abraham") to represent them in opposing enforcement of the settlement.

## C.   Conclusions of Law

■   A strong public policy exists in favor of settlements. *Edwards v. Born, Inc.*, 792 F.2d 387, 390 (3d Cir.1986); *ILA Local 1332 v. ILA,* 940 F.Supp. 779, 781 (E.D.Pa.1996). The settlement may be set aside only if plaintiffs meet their burden of proving that "cause" exists to vacate the dismissal order.

Plaintiffs argue, citing *Tiernan v. Devoe*, 923 F.2d 1024 (3d Cir.1991), that express authority is the only basis upon which to uphold a settlement under Pennsylvania law, that Mrs. Farris' testimony establishes that Booker was not authorized to enter into the settlement, and that Booker's testimony is not credible. Plaintiffs also point to Booker's lack of preparation for the damages phase of the trial as evidence that he was strongly motivated to settle the case. Defendant emphasizes the strong public policy favoring settlements, and focuses on the Farrises' silence when the settlement was announced in open court in their presence, as well as on Judge Fullam's statement that $20,000 would settle the case, as indicative that Booker had received this authority from his clients. Booker, who I also permitted to participate in the hearing, relies on his testimony and recollection that the Farrises accepted the $20,000 offer, and argues that the Farrises' subsequent dissatisfaction with the settle-

ment is not a valid basis for voiding the agreement.

While I agree with plaintiffs that the evidence establishes that Booker had no actual or express authority to settle their case on the 26th, I do not agree that the court in *Devoe* announced a rule that express authority to settle a case is the only basis upon which a settlement can be upheld under Pennsylvania law. In *Devoe*, the Third Circuit reviewed the relevant Pennsylvania law on the issue of an attorney's authority to settle a client's claim, notably *Rothman v. Fillette*, 503 Pa. 259, 469 A.2d 543 (1983). The court stated that "the law in [Pennsylvania] is quite clear that an attorney must have express authority to settle a cause of action for the client", *Devoe*, 923 F.2d at 1033 (citations omitted), but then went on to conclude that "the Pennsylvania Supreme Court might allow implied actual authority or apparent authority to suffice" under the appropriate set of facts. *Id.* at 1035.[6]

■   The court in *Devoe*, while recognizing that implied actual or apparent authority might be valid sources of authority to settle under Pennsylvania law, could not determine from the record whether either were present in the case before them, and consequently remanded the case for further proceedings. *Id.* at 1038. This case, however, presents the appropriate set of facts for a finding of apparent authority; I read *Devoe* to permit enforcement of a settlement where apparent authority is present.[7]

6. The court in *Devoe* defined apparent authority as follows:
Apparent authority ... has as its source the client's conduct toward another party in the litigation. It arises from a principal's manifestations to a third party that an agent has authority to act on the principal's behalf. See Restatement (Second) of Agency § 8 (1958). *Id.* at 1034.

7. See also, *Sustrik v. Jones & Laughlin Steel Corp.*, 189 Pa.Super. 47, 50, 149 A.2d 498 (1959), discussed in *Devoe*, 923 F.2d at 1034, in which the Pennsylvania Superior Court upheld a settlement in a case where defense counsel had observed plaintiffs conferring with their attorney several times during settlement negotiations. The court relied on the Restatement of Agency § 159 comment b (1933) which binds a principal to unauthorized acts of an agent where "the

principal may fairly be charged with responsibility for the third person's misapprehension as to the agent's authority."

There is no evidence in this case supporting implied actual authority, which "is the result of a principal's [the client's] conduct toward his agent [the attorney]. It has as its source 'written or spoken words or other conduct of the principal [the client] which, reasonably interpreted, causes the agent [the attorney] to believe that the principal desires him so to act on the principal's account.'" *Devoe*, 923 F.2d at 1034, citing Restatement (Second) of Agency § 26 (1958). Booker did not, for instance, testify that Mr. or Mrs. Farris gave him any instructions regarding settlement negotiations, or what figure they would find acceptable.

In this case, I find Mrs. Farris's testimony that she did not authorize Booker to settle the case for $20,000, or any amount, to be credible. I therefore conclude that there was no express authority to settle this case. I conclude, however, that defendant reasonably interpreted the Farrises' actions on September 26, 1996—specifically, seeing the Farrises and Booker enter Judge Fullam's chambers, seeing Booker enter the witness room with his clients after the $20,000 offer was communicated, and seeing the Farrises at the counsel table as the settlement was read into the record, to mean that they (the Farrises) had given authorization to Booker to settle their case for $20,000.[8] These manifestations by the Farrises to defendant's counsel cloaked Booker with apparent authority sufficient to uphold the settlement. Whether or not Booker exceeded his authority as the Farrises' attorney (and the credible evidence makes plain that he did), the record contains words and actions by both Booker and the Farrises sufficient to support defendant's reasonable conclusion that a valid settlement had been reached. As noted by the court in *Devoe*, as between a third party who reasonably relies on the agent's authority to bind the principal, and the principal whose agent exceeded his or her authority, it is the party who empowered the agent, i.e., the principal, who should bear any resulting loss. *Id.* at 1035, discussing *Rothman.*[9]

Although the Farrises gave neither express nor implied authorization to their attorney to settle their personal injury claim against J.C. Penney, Inc., for $20,000, they did, by their actions on September 26, 1996, convey to defense counsel that their attorney had authority to enter into a valid settlement agreement on their behalf. Thus, Booker had apparent authority to settle the Farrises' claim, a valid basis upon which to uphold a settlement under Pennsylvania law. The defendant is entitled to finality with regard to an agreement it reasonably entered into over eighteen months ago; the Farrises may pursue their dissatisfaction with their attorney in another forum.[10]

### D. Order

**AND NOW,** this day of April, 1998, upon consideration of plaintiffs' motion to vacate

---

8. I recognize that the Farrises' silence at the counsel table as the settlement was read into the record could support ratification as an alternate ground for upholding the dismissal, i.e., that even if Booker was not authorized to settle the case, that the Farrises ratified the settlement by failing to repudiate it or protest when it was announced in court in their presence. Indeed, many jurisdictions endorse a rule that an attorney is presumed to have authority to compromise an action when the settlement is entered into in open court. See, e.g., *Hallock v. State,* 64 N.Y.2d 224, 485 N.Y.S.2d 510, 474 N.E.2d 1178 (1984); 90 A.L.R.4th 326, § 5 (collecting cases). I am reluctant to base enforcement of the settlement on this ground, as Mrs. Farris' testimony, to the effect that she did not hear or understand what was happening until the jurors were dismissed, was credible. She testified that she said something to Booker when she understood that the case had been settled, but the record does not reflect any statements from Mr. or Mrs. Farris at that time. The transcript reflects that the proceedings in which the settlement was announced, the jury recalled and dismissed, took three minutes from beginning to end. Mrs. Farris also testified that she returned to the courtroom within a few minutes to express her displeasure to the jury. Ms. Berger corroborated this testimony, although she could not recall precisely what Mrs. Farris said.

9. Although I am confident that the Pennsylvania courts would, as predicted in *Devoe*, find apparent authority a valid basis to uphold a settlement under the facts of this case, I am concerned that the inquiry places an unfair burden on the third party, in this case defense counsel, to demonstrate that they reasonably interpreted the principal's words and/or actions to authorize the attorney to settle the case. A more rational approach might be to adopt "inherent agency doctrine" as an alternate basis to uphold a settlement in cases where express authority is lacking, and the principal has made no manifestations of authorization to the third party, but the attorney has taken various steps indicating that he has authority to settle, i.e., attended a settlement conference whose attendance was limited to attorneys authorized to bind their clients. Such a doctrine requires more than the mere fact of representation to prove authority to settle, but it removes the burden from the third party to produce affirmative evidence of actual or apparent authority, and places the dispute where it should be, between the principal and his or her agent. See, e.g., Harvey, *Settling in New York: Abdicating Traditional Agency Principles in the Context of Settlement Disputes,* 9 Touro L.Rev. 449, 477–8 (1993).

10. I express no opinion regarding the reasonableness or unreasonableness of the $20,000 figure to resolve the Farrises' claims against defendant.

the judgment of dismissal entered in this case on September 26, 1996 (Docket # 45), defendant's response, and after an evidentiary hearing on February 25, 1998, **IT IS ORDERED THAT** plaintiffs' motion is **DENIED** for the reasons set forth in the accompanying memorandum.