## Halowell v. Strishock

C.P. of Clearfield County, no. 95-1253-CD.

*Christina Hurnyak,* for plaintiffs.
*James M. Horne,* for defendant.

AMMERMAN, *J.,* March 19, 1999—The above-captioned matter is a result of an automobile accident that occurred on November 14, 1993, in which plaintiff Charlene Halowell and her minor daughter, Jennifer Halowell, were struck by a vehicle driven by defendant, Mark Strishock Jr.

Thomas J. Sibert, Esquire, of the law firm of Edgar Snyder and Associates, initiated the personal injury action by way of a writ of summons filed on September 5, 1995. On September 22, 1995, an appearance was entered on behalf of the defendant and plaintiffs were ruled to file a complaint. A complaint was filed on October 23, 1995 and, in response, defendants filed an answer with new matter on December 1, 1995. Defendants responded with an answer to new matter on December 1, 1995. The pleadings were then closed.

Plaintiffs originally named not only the driver, defendant Mark Strishock, Jr., of the vehicle involved in the accident, but also his parents, Mark Strishock and Paula Strishock. By stipulation of the parties, the

action against defendants Mark and Paula Strishock was discontinued with prejudice on September 11, 1996.

Discovery was eventually completed by the parties and on July 11, 1997, plaintiffs filed a certificate of readiness certifying that this matter was ready for trial. The parties submitted their respective pretrial statements and a pretrial conference was held before this court on August 29, 1997. Following pretrial conference, the case was scheduled for jury selection on September 11, 1997, and a jury was in fact selected at that time. Trial was scheduled to commence on December 10, 1997.

Prior to trial, counsel for both parties advised this court that both sides had agreed to resolve the case by way of a binding alternative dispute resolution involving the use of three arbitrators. The parties alleged agreement to resolve the matter on this basis was confirmed by letters from counsel to this court, and following receipt of the same, this court issued the following order which was in the form as agreed upon by counsel:

"Now, November 26, 1997, the court having been advised that the parties to the above matter have agreed to resolve this action by way of a binding alternative dispute resolution process, and counsel, for all parties having confirmed said understanding to the court in writing, it is therefore ordered that the jury trial scheduled to commence in this matter on December 10, 1997, be and the same is hereby canceled.

"The court further directs that upon completion of the alternative dispute resolution process, the plaintiffs shall promptly file with the prothonotary a notice of discontinuance such that this matter may be appropriately removed from the trial docket."

No further docket activity in the matter occurred until the defendant filed on December 4, 1998 a motion to mark this action settled, discontinued and ended, with prejudice. The ADR process had been completed and defendant and his insurance carrier were ready, willing, and able to pay all sums due to plaintiffs as a result of the arbitrators' decision. However, plaintiffs refused to sign any releases necessary for the issuance of settlement drafts and also refused to file a notice of discontinuance as required by the court's order of November 26, 1997. On January 22, 1999, this court entered an order directing plaintiffs to file a written response to the motion within 20 days, which answer was to "set forth plaintiffs' position with respect to each of the allegations in defendant's motion, as well as any and all other defenses plaintiffs desired to raise in response to said motion." The order further specified that argument on the motion would be held on February 17, 1999.

A written response was filed to the motion on behalf of the plaintiffs by Attorney Sibert. The answer admitted all allegations in defendant's motion, except to say that the plaintiffs were unhappy and displeased with the results of the arbitration, and therefore refused to accept the arbitrators' award or to sign releases. No affirmative defenses such as fraud, duress or mistake on the part of the defendant were asserted in plaintiffs' answer. On February 16, 1999, new counsel, Attorney Christina Hurnyak of the Tarasi Law Firm P.C. entered her appearance for plaintiffs. Plaintiffs' new attorney did not file any supplemental response to plaintiffs' answer setting forth any other grounds for opposing the motion of the defendant.

At argument on the defendant's motion held on February 17, 1999, Attorney Hurnyak claimed the plaintiffs

had not been aware that the arbitration proceeding was binding, and demanded a jury trial. The parties were then given the opportunity to submit briefs on the issue of whether the court should provide plaintiffs a further evidentiary hearing with respect to defendant's motion. Both parties filed briefs.

Attorney Hurnyak also filed an affidavit of the plaintiffs with this court on February 17, 1999 which stated, in part, that "at no time prior to the arbitration were we informed that the arbitrators' decision would be binding and not subject to appeal." The affidavit is the only document on record that supports the plaintiffs' proposition that the arbitrators' award be set aside and the jury trial be rescheduled. The averments within the affidavit are entirely consistent with argument made by Attorney Hurnyak on plaintiffs' behalf on February 17, 1999. In summary, the plaintiffs are not satisfied with the amount of money the arbitrators determined they should receive and are demanding a trial based upon their claim that Sibert didn't inform them that the ADR process was binding.

The issue to be determined by this court is whether plaintiffs are now entitled to an evidentiary ·hearing on defendant's motion to mark this case settled, discontinued, and ended, with prejudice. This court is of the opinion that the plaintiffs, even if the allegations of their affidavit are true, are not entitled to an evidentiary hearing in this matter. Plaintiffs are bound by the actions of Attorney Sibert and must accept the outcome of the ADR process.

It is well-settled in Pennsylvania "that what an attorney does in the course of his representation . . . is presumed to be by the authority of his client." *Weeast v. Borough of Wind Gap,* 153 Pa. Commw. 330, 336 n.5, 621 A.2d 1074, 1077 n.5 (1993). In essence, at-

torneys act as the agent of their clients, such that "any acts performed and statements made by the attorney within the scope of his or her employment . . . are binding upon the client." *Weiner v. Lee,* 669 A.2d 424, 428 (Pa. Commw. 1995), *alloc. denied,* 547 Pa. 734, 689 A.2d 237 (1997), citing *Walck v. PennDOT,* 155 Pa. Commw. 1, 625 A.2d 1276 (1993). In order to maintain any sense of order, the courts must be able to rely upon the representations of counsel. Otherwise, chaos would control our dockets as parties, unsatisfied with their counsel due to what would be perceived as unfavorable settlements and verdicts, would continuously seek to redress undesirable results.

Plaintiffs are not the only individuals who may not have had their best interests represented by counsel. The courts of Pennsylvania have had to address this issue several times in the past. In particular, by the Pennsylvania Supreme and Superior Courts in *Rothman v. Fillette,* 503 Pa. 259, 469 A.2d 543 (1983) and *Manzitti v. Amsler,* 379 Pa. Super. 454, 550 A.2d 537 (1988), *aff'd* 524 Pa. 587, 574 A.2d 601 (1990).

In *Rothman,* the minor plaintiff had been injured in a motor vehicle accident. Unknown to the minor or his parents, his attorney entered into a settlement with the defendants and their insurance carrier. The attorney then proceeded to forge the plaintiff's name on the release and check, and confiscated the proceeds of the settlement for his own use. When the plaintiff, five years later, discovered the actions of his attorney, he filed a petition to remove the order marking the case settled, discontinued and ended. The lower court granted the prayer of the petition and reinstated the action against defendants, the Fillettes. That ruling was

affirmed by the Superior Court. However, the Supreme Court determined that the petition to strike the order settled, discontinued and ended must be denied.

In its ruling, the Supreme Court reasoned that "in our judgment both of the parties of this action were innocent and free of any fault. Mr. Rothman in selecting his counsel, a person at that time certified to practice law by this court, had no reason to suspect misconduct. Likewise, the Fillettes and their insured bargained in good faith with appellee and Mr. Madnick, [opposing counsel,] under circumstances that would not reasonably give rise to any inference that counsel was breaching a trust to the client. The Fillettes and their insurer had every reason to believe under the facts presented that the purported settlement had been expressly approved by Mr. Rothman." *Rothman, supra* at 264, 469 A.2d at 545. (footnote omitted)

The Supreme Court applied the long-standing principle that "where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss. . . . Where one of two innocent persons must suffer, the loss should be borne by him who put the wrongdoer in a position of trust and confidence and thus enabled him to perpetrate the wrong." *Id.* at 265, 469 A.2d at 545. Although the Supreme Court recognized that the result was harsh for the injured minor, the court reasoned that the strong judicial policy favoring settlement required such a result. Thus, in a situation such as the present one, where there is some dispute between the plaintiffs and their counsel as to the attorney's authority to settle the matter, it is the plaintiffs, and not the innocent defendant, who must bear the consequences of such dispute. Likewise, in *Manzitti, supra,* the Superior Court followed the rationale of the Supreme Court in *Rothman* in upholding

a settlement of a medical malpractice case even though the attorney was not authorized to settle the claim for loss of consortium for the plaintiff's wife. The Superior Court opined that the defendants and their insurer had a reasonable belief that the oral settlement agreement had been expressly authorized by the plaintiff's attorney. The court further reasoned that the plaintiff's attorney had indeed exceeded his authority in settling the matter. Nonetheless, the Superior Court, relying on *Rothman,* determined that the settlement must be enforced and that the defendants should not be punished for the dispute that existed between plaintiffs and their counsel.

In essence, "[t]here is a strong judicial policy in favor of the parties voluntarily settling lawsuits. . . . A primary reason to settle claims is that settlement is the faster way to get money into the hands of a victim of tortious conduct. A secondary reason is to reduce the burden on and expense of maintaining the courts." *Rothman, supra* at 266-67, 469 A.2d at 546 (1983).

In this case, the dispute is between the plaintiffs and Attorney Sibert as to whether he informed them of the particulars of binding arbitration. Pursuant to the rationale of *Rothman* and *Manzitti,* it is the plaintiffs, and not the innocent defendant, who must bear the consequences of such dispute. Counsel for both parties confirmed the agreement to proceed to binding arbitration. The court confirmed the same through its order. The defendant is prepared to proceed with the arbitration result. The plaintiffs make no claim of fraud or wrongdoing against the defendant. If the plaintiffs so decide, they may file a malpractice action against their former counsel.

Thus, plaintiffs' request for an evidentiary hearing must be denied and this honorable court enters the following:

## ORDER

Now, March 19, 1999, it is the order of this court that defendant's motion to mark this case settled, discontinued and ended, with prejudice, be and is hereby granted. Plaintiffs shall comply with the arbitrators' award and execute the required release documents.