J-A01041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| SPILLED MILK, INC. D/B/A PHILLYRUBBER.COM | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : | |
| v. | : | |
| | : | No. 240 EDA 2024 |
| NAUTILUS INSURANCE COMPANY, MICHAEL R. SHELLY, ZENITH PUBLIC ADJUSTERS, LLC, AND LIBERTY PUBLIC ADJUSTERS, LLC | : | |

Appeal from the Order Entered December 11, 2023
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): 220601343

BEFORE: DUBOW, J., KING, J., and SULLIVAN, J.

MEMORANDUM BY SULLIVAN, J.: **FILED OCTOBER 28, 2025**

Spilled Milk, Inc. d/b/a PhillyRubber.com ("Spilled Milk"), the plaintiff below, appeals from the final judgment entered after the trial court, in relevant part, sustained the preliminary objections in the nature of demurrer filed by one of the defendants, Nautilus Insurance Company ("Nautilus"), and assessed damages against the remaining defendants. Because the trial court misapplied the standard of review when deciding Nautilus's preliminary objections, we vacate the judgment in part, reverse the dismissal of the Spilled Milk's claims against Nautilus, and remand this matter for further proceedings.

We summarize the factual background relevant to this appeal based upon the facts alleged in Spilled Milk's amended complaint. Spilled Milk

manufactures rubber products and had a commercial insurance policy with Nautilus (the "policy"). ***See*** Spilled Milk's Am. Compl., 8/16/22, at ¶¶ 2, 25. Spilled Milk suffered a loss at a factory in Philadelphia and retained Zenith Public Adjusters, LLC ("Zenith") to advise and assist in the adjustment of an insurance claim with Nautilus. ***See id***. at ¶¶ 4, 54-58. An employee of Spilled Milk signed a letter of representation under Zenith's letterhead, which Nautilus received, and which read:

> This is to certify that Zenith . . . is hereby retained to advise and assist in the adjustment of the insurance claim arising from [the] loss . . ..
>
> I/we request that all correspondence relating to this loss be directed solely to Zenith . . ..
>
> Please include the name Zenith . . . on all drafts or checks pertaining to th[e] loss and please forward all of the same to Zenith . . . at the above address [in Newtown Square].

***See id***., Ex. 2 (hereinafter cited as "Ltr. of Representation, 1/23/19").

Michael R. Shelly ("Shelly") was an officer with Zenith, but he also controlled an entity referred to as Liberty Public Adjusters, LLC ("Liberty"). ***See id***. at ¶¶ 9, 31-32. Shelly settled Spilled Milk's insurance claim with Nautilus, and he instructed Nautilus to pay Liberty. ***See id***. at ¶¶ 9, 70-72. Nautilus issued a total of $722,468.41 in checks ("the proceeds") to Liberty, and at least two of those checks named Spilled Milk and Liberty as joint

payees. *See id*. at ¶¶ 13; *see also id*., Ex. 5.[1] Neither Nautilus nor Shelly informed Spilled Milk of the settlement or the payments of the proceeds, and Shelly thereafter stole the proceeds. *See id*. at ¶¶ 12, 14-15. When Spilled Milk learned of the settlement and payments to Liberty, Spilled Milk demanded Nautilus pay Spilled Milk directly for its insurance claim. *See id*. at ¶ 16. Spilled Milk's and Nautilus's attorneys exchanged a letter denying Spilled Milk's demand, a letter in response to the denial, and a letter in reply to the response. *See id*. at ¶¶ 89-106; *see also id*., Exs. 5-7. In explaining the denial of Spilled Milk's demand, Nautilus's counsel indicated Nautilus would not reissue checks to replace the proceeds stolen by Spilled Milk's agent. *See id.*, Ex. 7, at 2.[2]

Spilled Milk commenced the underlying action against Nautilus, Shelly, Zenith, and Liberty. As set forth in its amended complaint, Spilled Milk

---

[1] The amended complaint included copies of two checks. *See* Spilled Milk's Am. Compl., 8/16/22, Ex. 5. Those checks indicate Nautilus paid $672,486.41 of the proceeds to the order of "Spilled Milk Inc. dba PhillyRubber.com & Liberty Public Adjusters LLC." *See id*. (some capitalization omitted) The backs of those checks include handwritten endorsement by Spilled Milk and "Liberty Public Adjusters dba Zenith Public Adjusters." *See id*. (some capitalizations omitted). There is no indication Spilled Milk endorsed those checks.

[2] The amended complaint referred to a consent order between the Insurance Department of Pennsylvania and Shelly and Zenith which found Shelly and Zenith failed to remit $722,486.41 to Spilled Milk, as well as Shelly's conviction for criminal offenses. *See id*. at ¶¶ 83-85. Although the consent order was not attached to the amended complaint, it was later added to the record as an exhibit. The consent order did not mention Liberty, and the record contains no further clarification on what, if any, corporate relationship there had been between Zenith and Liberty.

- 3 -

asserted Nautilus made unauthorized payments to an improper party, *i.e.*, Liberty, and failed to inform or consult with Spilled Milk before so doing. *See id*. at ¶¶ 10-13. For those reasons, Spilled Milk suggested that Nautilus had yet to properly pay for Spilled Milk's insurance claim. In count I of the amended complaint, Spilled Milk claimed that Nautilus's improper payment to Liberty and refusal to pay Spilled Milk's subsequent demand constituted breaches of the insurance policy and Nautilus's duty of good faith and fair dealing. *See id*. at ¶¶ 114-25. In count II, Spilled Milk claimed Nautilus's refusals of Spilled Milk's demands constituted a bad faith in violation of 42 Pa.C.S.A. § 8371. *See id*. at ¶¶ 132-35.[3] In count III, Spilled Milk raised an alternative claim that Nautilus was unjustly enriched by keeping Spilled Milk's premiums without making a proper payment to Spilled Milk. *See id*. at ¶¶ 137-40.

_____

[3] Section 8371 states:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

> (2) Award punitive damages against the insurer.

> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371.

Nautilus filed preliminary objections and, in relevant part, challenged the legal sufficiency of the three counts against it. Nautilus maintained that it properly paid for Spilled Milk's loss "as directed by [Spilled Milk's] authorized agent, Zenith." Nautilus's Prelim. Objs. to Am. Compl., 9/6/22, at ¶ 30. Nautilus noted that it included Spilled Milk as a joint payee on checks it issued, which would have required Shelly to forge Spilled Milk's endorsements. *See id*. at ¶¶ 31-32. Nautilus further claimed that it had no duty to communicate with Spilled Milk about the request to pay Liberty because the letter of representation had instructed Nautilus to direct all correspondence related to the loss solely to Zenith. *See id*. at ¶¶ 26-27. Nautilus concluded that Spilled Milk's allegations against it for breach of contract (count I) were legally insufficient because the amended complaint established only that Spilled Milk was a victim of the criminal actions of Spilled Milk's own agent. *See id*. at ¶¶ 28-30 (citing *Rothman v. Fillette*, 469 A.2d 543 (Pa. 1983)). Nautilus continued that the remaining claim for bad faith (count II) failed because Nautilus had a reasonable basis to deny Spilled Milk's demand for a second payment for the loss, and that the Spilled Milk could not sustain a claim for unjust enrichment (count III) because there had been a written insurance policy between Spilled Milk and Nautilus. *See id*. at ¶¶ 40, 55-56.

The trial court sustained Nautilus's preliminary objections and dismissed all counts against Nautilus. The trial court determined that "Nautilus fulfilled its contractual duty and honored its insurance policy covering Spilled Milk, but [Zenith] never transferred the money to [Spilled Milk]." Order, 1/6/23, at 1.

Citing **Rothman** for the principle that "where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss[,]" the trial court reasoned that Spilled Milk bore the loss caused by the criminal activity of its own agent. **See id**. (quoting **Rothman**, 469 A.2d at 545). The trial court concluded, "There [wa]s no breach of contract and no bad faith," and there could be no unjust enrichment because Nautilus did not benefit from Zenith's fraud. **Id**. Nautilus, the trial court emphasized, could not be made to pay twice for Spilled Milk's loss. **See id**.

Spilled Milk thereafter obtained default judgments against Shelly, Zenith, and Liberty. Following a hearing on damages, the trial court entered a judgment against Shelly, Zenith, and Liberty.[4] Spilled Milk timely appealed. The trial court did not order a Pa.R.A.P. 1925(b) statement but filed a separate opinion, wherein the court further reasoned:

> Spilled Milk['s] argument rests on a claim that it never authorized Nautilus to name Liberty as a payee on the checks that Nautilus sent to Shelly. ***The flaw is that Nautilus also named Spilled Milk as a payee and therefore Nautilus did not rely on an instruction from one of Michael Shelly's employees to protect its policyholder. Aware that Spilled Milk had contracted with a licensed insurance public adjustor, Nautilus rightfully expected the public adjustor to honor its own duty to Spilled Milk***. Even so, just in case, Nautilus made sure that Spilled Milk was named as a separate payee who would

_____

[4] Specifically, the trial court entered a judgment against Shelly, Zenith, and Liberty, jointly and severally, awarding Spilled Milk $708,767.74. **See** Order, 12/11/23, at 1. We note that the amended complaint averred that Shelly had repaid Spilled Milk $143,241.29. The damages hearing also contained some evidence that Shelly made some restitution payments as part of his criminal conviction.

have to endorse the checks before any bank could legally agree to release the money.

In short, demurrer was granted because the law does not assess Spilled Milk's criminal loss to Nautilus.

\* \* \* \*

Having chosen . . . Shelly and his public adjustment business**es**, Spilled Milk cannot assess its loss to Nautilus which was never a party to Spilled Milk's public adjustor contract.

Trial Ct. Op., 5/29/24, at 3-4 (footnote omitted) (emphases added).

Spilled Milk raises the following issues for our review:

A. Did the trial court commit an error of law and an abuse of discretion by failing to accept as true all well-pleaded material and relevant facts in the amended complaint and by basing its decision sustaining Nautilus's preliminary objections on unsupported factual claims that contradict facts [Spilled Milk] pleaded?

B. Did the trial court commit an error of law and abuse its discretion by basing its decision sustaining Nautilus's preliminary objections on the trial court's factually unsupported causation finding, which is a determination reserved for the jury?

C. Did the trial court commit an error of law and abuse its discretion by sustaining Nautilus's preliminary objections to count I for breach of contract?

D. Did the trial court commit an error of law and abuse its discretion by sustaining Nautilus's preliminary objections to count II for violation of 42 Pa.[C.S.A.] § 8371?

E. Did the trial court commit an error of law and abuse its discretion by sustaining Nautilus's preliminary objections to count III for unjust enrichment?

Spilled Milk's Br. at 4-5 (some capitalizations omitted).

When reviewing a decision to sustain preliminary objections in the nature of demurrer, this Court and the trial court apply the same standard, which our Supreme Court has summarized as follows:

> A trial court may sustain a demurrer, and thereby dismiss a claim, only when the law is clear that a plaintiff is not entitled to recovery based on the facts alleged in the complaint. In determining the merits of a demurrer, all well-pleaded, material facts set forth in the complaint and all inferences fairly deducible from those facts are considered admitted and are accepted by the trial court as true; conclusions of law are neither deemed admitted nor deemed true.

*Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 468 (Pa. 2006) (internal citations omitted). "Preliminary objections which seek the dismissal of a cause of action should be sustained only in cases in which it is clear and free from doubt that the pleader will be unable to prove facts legally sufficient to establish the right to relief." *Godlove v. Humes*, 303 A.3d 477, 481 (Pa. Super. 2023) (internal citation omitted). A court should resolve any doubts as to whether a demurrer should be sustained in favor of overruling the preliminary objections. *See id*.

In its first two issues, which are related, Spilled Milk claims the trial court misapplied the standard of review. Spilled Milk contends the trial court predicated its decision on findings of facts which lacked support in the material facts in the amended complaint and which were not ripe for resolution on preliminary objections. *See* Spilled Milk's Br. at 22-23.[5] Specifically, Spilled

_____

[5] Because the trial court did not order a Rule 1925(b) statement, it did not specifically address these first two issues.

Milk challenges the trial court's statements that Spilled Milk had chosen, as its agent, Shelly and his business**es**, a plural reference apparently to Zenith **and** Liberty. **See id**. at 22. Further, Spilled Milk further avers the trial court's suggestion that Nautilus did not rely on instructions by one of Shelly's employees because, while Nautilus added Liberty as a payee to checks it issued, it included Spilled Milk as a joint payee. **See id**. Spilled Milk suggests the trial court also improperly found facts that Nautilus could not have contributed or caused the theft of the proceeds because it included Spilled Milk as a joint payee on those checks. **See id**. at 24-25.

Following our review, we agree the trial court misapplied the standard of review when dismissing Spilled Milk's claims against Nautilus. Here, the amended complaint stated Spilled Milk had contracted with Zenith, not with Shelly or any other of his businesses. **Compare** Spilled Milk's Am. Compl., 8/16/22, at ¶ 5 **with** Trial Ct. Op., 5/29/24, at 3. The letter of representation provided that Spilled Milk had retained **Zenith** and instructed Nautilus to include **Zenith** on drafts or checks pertaining to the loss. **See** Ltr. of Representation, 1/23/19, at 1. The letter of representation also instructed that correspondence and payments be directed to **Zenith**; but, according to the amended complaint, Nautilus disregarded Spilled Milk's instruction and instead accepted Shelly's instructions to issue the proceeds to **Liberty**. **See** Spilled Milk's Am. Compl., 8/16/22, at ¶¶ 72-77. As pleaded, these material facts, which must be taken as true for the purpose of demurrer, could support

a conclusion that Nautilus issued the proceeds to an unauthorized party. ***See id***., at ¶¶ 78-79.

Moreover, we are constrained to note that the trial court's opinion imputed certain motives, intentions, or expectations behind Nautilus's decision to name Spilled Milk as a joint payee along with Liberty. ***See*** Trial Ct. Op., 5/29/24, at 3 (suggesting that Nautilus did not rely on instructions to pay Liberty, named Spilled Milk as a joint payee "to protect its policyholder[,]" and "Nautilus rightfully expected the public adjustor to honor its own duty to Spilled Milk"). However, "fact-based defenses, even those which might ultimately inure to the defendant's benefit . . . are not relevant on demurrer." ***See Orner v. Mallick***, 527 A.2d 521, 523 (Pa. 1987). Thus, to the extent the trial court drew factual inferences in favor of Nautilus based on the designation of Spilled Milk as a joint payee, the court erred.

We acknowledge the established rule, advocated for by Nautilus and applied by the trial court, that "where one of two innocent persons must suffer because of the fraud of a third, the one who has accredited him must bear the loss." ***Rothman***, 469 A.2d at 545. However, our courts have cautioned that the rule can be misapplied "where two persons are not equally without fault, but one owes a duty to the other to do or to refrain from doing a particular thing and has failed in the performance of the duty." ***Vanderslice v. Royal Ins. Co.***, 43 W.N.C. 381, 9 Pa. Super. 233 (1899). The facts and circumstances of a particular case dictate where the burden of a loss caused

by the fraudulent act of a third party will fall. *See Ervin v. City of Pittsburgh*, 14 A.2d 297, 303 (Pa. 1940).

In the present case, the amended complaint properly supported the claim that Nautilus lacked any authority to change the terms of the letter of representation to issue checks to Liberty without consulting Spilled Milk. Nautilus, in its preliminary objections, offered alternate conclusions based on the same allegations—namely, that Zenith, Spilled Milk's agent, authorized the change in payees, that Nautilus had no duty to consult or confirm the change in payees with Spilled Milk because the letter of representation provided that all correspondence relating to the loss was to be sent to Zenith, and Spilled Milk did not allege Nautilus bore any fault in Shelly's theft of the proceeds. *See* Nautilus's Prelim. Objs. to Am. Compl., 9/6/22, at ¶¶ 26-27, 30-32.

As stated above, when resolving these competing positions raised in preliminary objections, a court must focus on the material facts alleged by Spilled Milk in its amended complaint and disregard fact-based defenses. *See Orner*, 527 A.2d at 523. Moreover, where the parties offer different, but reasonable, interpretations of the terms of an agreement, a court should not sustain preliminary objections in the nature of demurrer. *See Ins. Adjustment Bureau*, 905 A.2d at 469-70 (noting that a moving party does

not establish the requisite certainty to sustain a preliminary objection in the nature of demurrer when an underlying agreement is ambiguous).[6]

Focusing on the allegations of material fact, we conclude that Spilled Milk pleaded sufficient facts to conclude Nautilus improperly issued the proceeds to an unauthorized party and that it was premature for the trial court to conclude that "Nautilus fulfilled its contractual duty and honored its insurance policy covering Spilled Milk." *See* Order, 1/6/23, at 1. A proper assessment of which party was *more* at fault for enabling Shelly's theft of the proceeds will be for further proceedings following more developed pleadings and record evidence. *See Orner*, 527 A.2d at 523.

For these reasons, we agree with Spilled Milk's first two issues that the trial court misapplied the standard of review when reviewing Nautilus's preliminary objections and reached factual findings and conclusions of law that were not ripe for decision. To determine whether these errors were prejudicial, we turn to Spilled Milk's specific causes of action in counts I through III of the amended complaint.[7]

_____

[6] Spilled Milk mentions in passing that the agreement between it and Zenith also indicated that its employee "appears to have signed his name . . . on a line" intended to rescind the agreement. *See* Spilled Milk's Br. at 30-31. We decline to address this argument given our conclusion that Spilled Milk pleaded adequate facts to render the application of the *Rothman* rule uncertain.

[7] We note that Spilled Milk also separately argued that the trial court erred in dismissing the three counts against Nautilus. *See* Spilled Milk's Br. at 26-39. However, because we have agreed with its first two issues, we need not engage in a lengthy discussion of Spilled Milk's arguments.

With respect to breach of contract and the implied terms of good faith and fair dealing (count I), it is well settled that payment by the insurer to a person entitled to the money satisfies the insurer's responsibility, such that the insurer cannot be held liable. **See Thomas v. Prudential Ins. Co. of Am.**, 598, 24 A. 82 (Pa. 1892); **Milner's Estate v. Prudential Ins. Co. of Am.**, 173 A.2d 661, 663 (Pa. Super. 1961). Moreover, payment to an authorized agent is payment to the principal. **Savidge v. Metro. Life Ins. Co.**, 110 A.2d 730, 732 (Pa. 1955).

Here, however, Spilled Milk claimed that Nautilus, by issuing the proceeds to Liberty, paid an unauthorized party and did not take adequate precautions to ensure it paid a proper party. As discussed above, the material facts in the amended complaint could support a legal theory that Nautilus's issued payments of proceeds an improper party, namely Liberty, which would not fulfill the terms of the insurance policy. **Cf**. **Smith v. Metro. Life Ins. Co. of New York**, 71 A. 11, 12 (Pa. 1908); 4 Couch on Ins. § 61:10 ("The insurer's payment of the proceeds of insurance to a person not entitled to the funds does not ordinarily relieve it of its liability to the proper beneficiary). Therefore, we reverse the trial court's decision to dismiss count I pursuant to preliminary objections.

As to the bad faith insurance claim in count II, our Supreme Court has held that

> to prevail in a bad faith insurance claim pursuant to [42 Pa.C.S.A. §] 8371, a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for

denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim.

*Rancosky v. Washington Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017). Additionally, this Court has recognized that section 8371 concerns the "manner in which insurers discharge their duties of good faith and fair dealing during the pendency of an insurance claim." *Berg v. Nationwide Mut. Ins. Co., Inc.*, 189 A.3d 1030, 1038 (Pa. Super. 2018) (internal citation, quotation marks, and bracket omitted).

Our review establishes that the trial court's determination that Spilled Milk failed to state a bad faith insurance claim rested on its determinations that Nautilus honored its obligations under the policy, and Spilled Milk had no basis to demand Nautilus pay a second time when Shelly and Zenith stole the funds. *See* Order, 1/6/23, at 1; Trial Ct. Op., 5/29/24, at 3. As discussed above, those determination cannot stand on the material facts set forth in the amended complaint, and it is not "clear and free from doubt that [Spilled Milk] will be unable to prove facts legally sufficient to establish the right to relief." *See Godlove*, 303 A.3d at 481. Therefore, we reverse the order as to count II.[8]

_____

[8] Nautilus, for the first time in this appeal, asserts that Spilled Milk's bad faith claim was time-barred. *See* Nautilus's Br. at 23 n. 4. Nautilus did not raise this claim in its preliminary objections, and, in any event, such a claim should be raised in a subsequent pleading as part of new matter. *See Sayers v. Heritage Valley Med. Grp., Inc.*, 247 A.3d 1155, 1159 (Pa. Super. 2021) (noting that "[g]enerally, a statute of limitations defense is properly raised in new matter . . ."); *see also* Pa.R.Civ.P. 1030(a). We decline to consider the
*(Footnote Continued Next Page)*

- 14 -

Lastly, as to unjust enrichment (count III), it is well settled that a plaintiff may plead causes of action under the breach of contract in the alternative with unjust enrichment so long as they are contained in separate counts. *See Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 970 (Pa. Super. 2009). Indeed, "[i]f the plaintiff fails to prove a cause of action on an express contract, [it] may not then attempt to prove [its] case in quasi-contract, unless [the] complaint originally, or as amended[,] sets forth a cause of action in quasi contract." *Id*. Nevertheless, a court may dismiss a count of unjust enrichment, where the allegations supporting the cause of action for unjust enrichment clearly arises from a transaction that is subject to a written or express contract. *See Khawaja v. RE/MAX Cent.*, 151 A.3d 626, 633 (Pa. Super. 2016).

In the present case, the amended complaint pleaded the existence of a written policy under which Spilled Milk paid premiums, allegations which Spilled Milk incorporated into its alternative claim for unjust enrichment (count III). However, we cannot conclude that Spilled Milk's policy with Nautilus, or the letter of representation, clearly controls the transaction at issue, namely, whether Nautilus made improper payments to an unauthorized party, as would render Nautilus's retention of the premiums unjust. Accordingly, we conclude dismissal of this alternate claim for relief at the preliminary objection stage of

_____

merits of Nautilus's belated reference to a statute of limitations defense where the parties have not had the opportunity to brief and argue the issue in the trial court. *See Sayers*, 247 A.3d at 1159.

- 15 -

this proceeding would be premature, and we reverse the trial court's dismissal of count III. *See Lugo*, 967 A.2d at 970.

In sum, we reverse the trial court's order sustaining Nautilus's preliminary objections. Because our decision may affect the damages awarded under the existing judgment against Shelly, Zenith, and Liberty, *cf*. *Judge Tech. Servs., Inc. v. Clancy*, 813 A.2d 879, 887 (Pa. Super. 2002) (noting that "an injured party cannot recover twice for the same injury"), we vacate that judgment as to damages only. We remand for further proceedings in the trial court consistent with this decision.

Judgment vacated in part. Order sustaining preliminary objections reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/28/2025

- 16 -